703 A.2d 278

STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
SYDNEY MATARAMA, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued October 15, 1997—Decided November 20, 1997.

Before Judges LONG, STERN, and KLEINER.

*Brian P. O'Reilly,* Designated Counsel, argued the cause for appellant (*Ivelisse Torres,* Public Defender, attorney for appellant; *Mr. O'Reilly,* of counsel and on the brief).

*Lisa Sarnoff Gochman,* Deputy Attorney General, argued the cause for respondent (*Peter Verniero,* Attorney General, attorney for respondent; *Ms. Gochman,* of counsel and on the brief).

The opinion of the court was delivered by

KLEINER, J.A.D.

On September 11, 1993, defendant Sydney Matarama, then sixteen and eleven-months of age, was arrested [1] and charged with juvenile delinquency, *N.J.S.A.* 2A:4A–23, for conduct, which if committed by an adult, would constitute carjacking, in violation of *N.J.S.A.* 2C:15–2a(1). On October 13, 1993, the State filed a motion to transfer the pending Family Part complaint to the Law Division where defendant, subsequent to indictment, would stand trial as an adult. The State's motion was ultimately granted on March 29, 1994.

Thereafter, defendant and Rudy Perdomo were indicted and charged as follows: first-degree carjacking, in violation of *N.J.S.A.* 2C:15–2a(1), (count one); first-degree armed robbery, in violation of *N.J.S.A.* 2C:15–1a(1), (count two); first-degree kidnapping, in violation of *N.J.S.A.* 2C:13–1b(1) and (2), (count three); third-

---

[1] Defendant's companion, Rudy Perdomo, an adult, was also arrested.

degree aggravated criminal sexual contact, in violation of *N.J.S.A.* 2C:14–3a, (count four); third-degree terroristic threats, in violation of *N.J.S.A.* 2C:12–3b, (count five); third-degree possession of a weapon, a T-bar auto stick shift, for purposes to use same against the person of another, in violation of *N.J.S.A.* 2C:39–4d, (count six); and fourth-degree unlawful possession of a weapon under circumstances not manifestly appropriate for such lawful uses as it may have, in violation of *N.J.S.A.* 2C:39–5d, (count seven).[2]

Tried to a jury, defendant was convicted on all counts with the exception of count four, charging aggravated criminal sexual contact.[3]

Defendant was sentenced on count one, carjacking, to a custodial term of twenty years with a five-year period of parole ineligibility. Counts five, six, and seven were merged with count two, and count two was merged with count one. On count three, kidnapping, defendant was sentenced to a custodial term of twenty years to be served concurrent with the sentence imposed under count one. Appropriate statutory penalties were imposed on counts one and three.[4]

On appeal, defendant raises six points of error with several subparts as follows:

POINT I

---

[2] The indictment also charged Perdomo with one additional crime, assault upon a police officer, *N.J.S.A.* 2C:12–1b(5).

[3] Perdomo was also convicted on counts one, two, three and five. He was acquitted on counts four, six and seven. The trial judge dismissed count eight on defendant's motion at the close of the State's case. Perdomo filed a separate appeal, A–4823–94T4. We have filed a separate opinion affirming Perdomo's conviction.

[4] The State admits that the written judgment of conviction does not conform with the oral sentence imposed by the trial judge. As written, the judgment of conviction reflects the imposition of a fine of $100 on count one. The trial judge did not impose a fine, but did impose a penalty of $100 payable to the Violent Crimes Compensation Board.

THE TRIAL JUDGE ERRED IN REFERRING DEFENDANT TO THE LAW DIVISION WHERE DEFENDANT COULD NOT PRESENT EXPERT REPORTS AND TESTIMONY, AND WHERE THE REASONS FOR REFERRAL DID NOT OUTWEIGH THE POSSIBILITY DEFENDANT COULD BE REHABILITATED.

A. The trial judge erred in not granting an adjournment and in suppressing all expert reports and testimony.

B. The court erred in ruling that the interests of the public required waiver where defendant's role or dangerousness was never clearly ascertained. (Phase I).

C. The trial judge erred in ruling that the reasons for referral did not outweigh the possibility that defendant could be rehabilitated. (Phase II).

D. The trial judge erred in ordering defendant referred to the Law Division on the complaint of carjacking when the basis for the referral was that defendant was guilty only of second-degree robbery.

*POINT II*

DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL AT THE REFERRAL HEARING. (Not raised below)

*POINT III*

THE TRIAL JUDGE'S CHARGE TO THE JURY WAS FLAWED DEPRIVING DEFENDANT OF A FAIR TRIAL. (Not raised below)

A. The trial judge erred in instructing the jury that the object of the theft in carjacking could be the car keys rather than the car itself.

B. Robbery, assault and theft of the person should have been charged as lesser-included offenses of carjacking. (Not raised below)

*POINT IV*

GIVING THE STATE THE BENEFIT OF ALL LEGITIMATE INFERENCES FROM THE RECORD DEFENDANT SHOULD HAVE BEEN ACQUITTED OF KIDNAPPING.

*POINT V*

THE PROSECUTORS COMMENTS THAT DEFENDANT'S DECISION TO TESTIFY PREJUDICED THE STATE'S CASE UNDULY INFLUENCED THE JURY RESULTING IN AN UNFAIR TRIAL. (Not raised below)

*POINT VI*

DEFENDANT'S SENTENCE TO TWENTY YEARS WITH A FIVE-YEAR PERIOD OF PAROLE INELIGIBILITY WAS EXCESSIVE.

Defendant's appeal challenges aspects of the juvenile waiver process, as well as an issue of first impression requiring an interpretation of the carjacking statute, *N.J.S.A.* 2C:15–2a(1). Both issues require discussion. However, after a thorough review of the record, we conclude that defendant's arguments lack merit, and thus we affirm defendant's conviction.

I

After attending a party at the home of a relative, Flora Gonzalez arrived at her residence, near the intersection of 64th Street and Boulevard East, in West New York, New Jersey, at 3:45 a.m. on September 11, 1993. Gonzalez parked her automobile, placed her automobile keys in her back pocket, and proceeded toward her front door with her house keys in her hand. As she neared her front door, a man, later identified as defendant, stepped in front of Gonzalez and demanded that she give her keys to him. Gonzalez screamed. Her assailant struck the right side of her forehead with a metal object. Gonzalez attempted to struggle with her assailant but was struck again and fell to the ground.

A second man, later identified as Perdomo, approached and began to rifle through Gonzalez's pockets. He demanded, "Give me the car keys or we'll kill you." This assailant then tore Gonzalez's blouse, and pulled her bra up around her neck, exposing her breast. During the struggle, Gonzalez's house keys were taken from her.

The first assailant dragged Gonzalez to the end of her building into a small alley. The assailant then fled. Gonzalez ultimately testified that after her assailant fled, she immediately saw a police officer approaching her.

According to Officer Conversano, while on routine patrol, he was flagged down by a passing motorist. He immediately proceeded to the intersection of 64th and Boulevard East. He observed a woman being assaulted by two men. He dispatched this information to police headquarters, exited his vehicle, and approached the scene. He described the lighting in the area as "very good." He noted that one assailant was holding an object in his fist, which "looked a little like a stick or a bar or something." When Conversano was ten to fifteen feet from the assailants, they noticed him and fled through the alleyway.

As a result of Conversano's radio dispatch, a number of officers arrived at the scene. Conversano provided the officers with a

description of the assailants. The details of the ensuing investigation in the neighborhood were explained at trial. We need not review these extensive details.

Suffice to say, one detective saw a male running on 65th Street. That detective exited his vehicle and caught the male, defendant, who immediately said, "I didn't do nothing to the lady, what are you charging me with." Defendant was searched and the detective found a metal gear shift in his pocket.

Another officer climbed a fire escape to the roof of a nearby building. He observed a barefoot[5] male crouched in a corner of the roof. This individual, co-defendant Perdomo, was apprehended and searched. A set of keys were found in his front left pocket.

Both assailants were brought to a location near the crime scene, as was the victim who had been badly bruised. Gonzalez was unable to identify either man. She was shown two sets of keys, and identified one set as her house keys. Gonzalez's automobile keys were not located.

## II

Defendant's first two points of error raise legal issues regarding his referral from the Family Part to the Law Division pursuant to *N.J.S.A.* 2A:4A–26. *See R.* 5:22–2.

■ In his first point, defendant contends that the motion judge erred when: (1) he denied defendant's counsel's request for a third postponement of the referral hearing to allow additional time to secure expert testimony; (2) he concluded that the interests of the public required referral despite the absence of evidence clearly defining defendant's role or defendant's dangerousness; (3) he

---

[5] During the initial investigation, Conversano found a brown leather moccasin at the crime scene. Conversano testified that later that same evening Perdomo tried on the moccasin and it fit. The State also produced as a witness another resident of the neighborhood, who found a matching brown moccasin the following morning.

concluded that the reasons for referral to the Law Division outweighed the possibility that defendant could be rehabilitated; and (4) he concluded that the basis for referral was probable cause that defendant had committed second-degree robbery although defendant had been charged with juvenile delinquency, characterized as carjacking.

In his second point, defendant contends he was denied effective assistance of counsel at the referral hearing.

We find both arguments completely without merit. *R.* 2:11–3(e)(2).

After the State filed its motion seeking referral to the Law Division, defendant's counsel scheduled a psychological evaluation. The evaluation was twice postponed, as defendant's mother failed to appear. That delay necessitated rescheduling of the referral hearing. After the evaluation was performed, defense counsel sought a second postponement to await receipt of the written evaluation. Ultimately, a written psychological evaluation was received; however, according to defense counsel, the psychologist's opinion was not helpful to defendant.[6] His counsel then sought a third postponement of the referral hearing to obtain a second psychological opinion. That request was denied.

A judge has discretion to allow a party additional time to secure witnesses. Only when the factual record demonstrates that the judge abused his discretion will we reverse. *See State v. Kyles,* 132 *N.J.Super.* 397, 402, 334 *A.*2d 44 (App.Div.1975); *see also State v. Barron,* 214 *N.J.Super.* 46, 50–51, 518 *A.*2d 484 (App.Div.1986) (finding no abuse of discretion in trial court's denial of an adjournment where there was no evidence that defendant's counsel failed to function as the "counsel" guaranteed by the Sixth Amendment). Here, counsel was unable to demonstrate that a further postponement would prove beneficial to

---

[6] Counsel did not provide the motion judge with a copy of the psychological evaluation, nor was the evaluation provided to this court in the record on appeal.

defendant. Without some proffer that an additional postponement would prove beneficial to defendant, we conclude the motion judge did not abuse his discretion in denying defendant's request.

At the referral hearing, the State relied on the testimony of Officer Conversano, who witnessed two assailants beating a fifty five-year-old woman who was laying on the ground. He testified that one assailant, the defendant, held a metal object in his fist as he beat his victim. The victim was injured and required medical attention.

Although defendant was charged with delinquency characterized as carjacking within the complaint filed in the Family Part, the judge concluded that there was probable cause to believe that the conduct of the defendant, if committed by an adult, would constitute second-degree robbery. Additionally, the judge concluded that the crime was committed in "an aggressive, violent and willful manner" and that "the nature and circumstances of the charge are sufficiently serious that the interests of the [public] require waiver."

The judge's detailed findings of fact and conclusions mirror the referral statute, *N.J.S.A.* 2A:4A–26, which states, in pertinent part:

> a. On motion of the prosecutor, the court shall, without the consent of the juvenile, waive jurisdiction over a case and refer that case from the Superior Court, Chancery Division, Family Part to the appropriate court and prosecuting authority having jurisdiction if it finds, after hearing that:
>
> (1) The juvenile was 14 years of age or older at the time of the charged delinquent act; and
>
> (2) There is probable cause to believe that the juvenile committed a delinquent act or acts which if committed by an adult would constitute:
>
> (a) Criminal homicide other than death by auto, strict liability for drug induced deaths, pursuant to N.J.S. 2C:35–9, robbery which would constitute a crime of the first degree, aggravated sexual assault, sexual assault, aggravated assault which would constitute a crime of the second degree, kidnapping or aggravated arson; or
>
> . . . .
>
> (d) An offense against a person committed in an aggressive, violent and willful manner. . . .
>
> . . . .

(3) Except with respect to [enumerated offenses], the State has shown that the nature and circumstances of the charge or the prior record of the juvenile are sufficiently serious that the interests of the public require waiver.

However, if in any case the juvenile can show that the probability of his rehabilitation by the use of the procedures, services and facilities available to the court prior to the juvenile reaching the age of 19 substantially outweighs the reasons for waiver, waiver shall not be granted.

The waiver of jurisdiction by the Family Part is governed by principles enunciated in *State v. R.G.D.*, 108 *N.J.* 1, 4, 527 *A.*2d 834 (1987).

The waiver of jurisdiction procedure is divided into two phases commonly referred to as Phase I and Phase II. *See State in the Interest of A.L.*, 271 *N.J.Super.* 192, 202–03, 638 *A.*2d 814 (App. Div.1994); *State in the Interest of A.J.*, 232 *N.J.Super.* 274, 556 *A.*2d 1283 (App.Div.1989). Here, the State clearly met its burden in each phase of the referral hearing. The motion judge cited the applicable statute and judicial precedent, and the testimony of Officer Conversano supportive of the judge's conclusion that the juvenile committed *a* delinquent act. *N.J.S.A.* 2A:4A–26a(2)(d) (emphasis added). *N.J.S.A.* 2A:4A–26 does not explicitly require the State to establish probable cause for the very act of delinquency initially charged in the juvenile complaint.

■ In affirming the judge's decision, we recognize that waiver to the Law Division is discretionary. *State v. Onque*, 290 *N.J.Super.* 578, 584, 676 *A.*2d 560 (App.Div.), *certif. denied*, 146 *N.J.* 497, 683 *A.*2d 200 (1996). A discretionary decision to refer a juvenile complaint to the Law Division will not be disturbed unless it is shown that the exercise of discretion was abused. *Ibid.* Defendant has failed to allege on appeal that the motion judge abused his discretion, and our review of the record on appeal fails to reflect any basis to reach such a conclusion. Additionally, the judge's findings of fact are clearly supported in the record and deserve great deference. *State v. Johnson*, 42 *N.J.* 146, 162, 199 *A.*2d 809 (1964).

We particularly note that defendant's counsel failed to raise an objection to the judge's decision to refer to the Law Division

predicated upon an act of delinquency, characterized as second-degree robbery, rather than the act of delinquency, characterized as carjacking, as cited in the juvenile complaint. As such, defendant may not raise this issue on appeal. *R.* 1:7–2. Defendant also does not contend that the motion judge's ruling constitutes "plain error." *R.* 2:10–2.

Moreover, although the motion judge did not find that defendant's conduct constituted carjacking,[7] or first-degree robbery, he properly placed defendant's conduct within *N.J.S.A.* 2A:4A–26a(2)(d), as "an offense against a person committed in an aggressive, violent and willful manner." *Ibid.* The facts underlying the charge of second-degree robbery in this case clearly permitted the judge to transfer jurisdiction to the Law Division, notwithstanding the fact that the judge did not find defendant's conduct to be within any of the offenses enumerated in *N.J.S.A.* 2A:4A–26a(2)(a).

■ We also conclude that defendant's contention that his counsel was ineffective lacks merit. *R.* 2:11–3(e)(2). Defendant claims his counsel was deficient in:

(1) Neglecting to secure an expert report in the time frame set by the court to demonstrate the possibility that defendant can be rehabilitated by the age of nineteen, or to present evidence on the issue of defendant's amenability to rehabilitation.

(2) Neglecting to adequately explore the possibility of defendant testifying at the referral hearing as to his specific involvement in the offense.

(3) Neglecting to provide the court with evidence of other rehabilitative programs and services to the court.

In evaluating defendant's claim, we must first consider the standard enunciated in *State v. Fritz,* 105 *N.J.* 42, 519 *A.*2d 336 (1987). In *Fritz,* our Supreme Court adopted the two-part test set forth in *Strickland v. Washington,* 466 *U.S.* 668, 104 *S.Ct.* 2052, 80 *L.Ed.*2d 674 (1984). *Fritz, supra,* 105 *N.J.* at 51–52, 519 *A.*2d 336.

---

[7] The judge's decision pre-dated our decision in *State v. Williams,* 289 *N.J.Super.* 611, 674 *A.*2d 643 (App.Div.), *certif. denied,* 145 *N.J.* 375, 678 *A.*2d 716 (1996), discussed *infra* in Part III of this opinion.

To prove ineffective assistance of counsel, a defendant must first show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that counsel's deficient performance prejudiced the defendant and was so serious as to deprive the defendant of a fair trial. *Ibid.*

In the context of a juvenile referral hearing, we are guided by *State v. Jack,* 144 *N.J.* 240, 676 *A.*2d 545 (1996). To prove a claim of ineffective assistance of counsel, a juvenile must demonstrate "that there was evidence of a genuine potential for rehabilitation that counsel did not present to the juvenile court." *Id.* at 255, 676 *A.*2d 545. Defendant makes no such showing here. The record is devoid of any evidence of this type.

Clearly, defendant's counsel fought diligently for her client. She received two postponements of the referral hearing while awaiting a psychologist's report. When the report did not support defendant's position, she sought additional time to seek a new opinion. When this motion was denied, she appealed the issue to this court, to no avail. Counsel cannot be held responsible where an expert report as rendered was unfavorable to her client's position. We note, however, that claims of ineffective assistance of counsel are difficult to evaluate on direct appeal. *See State v. Preciose,* 129 *N.J.* 451, 460, 609 *A.*2d 1280 (1992). We preserve defendant's right to assert this claim in a petition for post-conviction relief. *R.* 3:22–1 to –11.

### III

In defendant's third point of error, he contends for the first time on appeal that the judge's jury charge predicated upon the carjacking statute, *N.J.S.A.* 2C:15–2, was error as the judge directed that the object of a theft in a carjacking can be the car keys, as part of a criminal act intended to result in the theft of an automobile. We disagree. We conclude that the judge's charge fully comports with the carjacking statute. Additionally, the charge comports with our analysis of this statute as discussed in

*State v. Williams*, 289 *N.J.Super.* 611, 674 *A.2d* 643 (App.Div.), *certif. denied*, 145 *N.J.* 375, 678 *A.2d* 716 (1996). Moreover, the charge does not constitute plain error. *See R.* 2:10–2.

Carjacking is defined in *N.J.S.A.* 2C:15–2 as the following:

> a. **Carjacking defined.** A person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle, as defined in R.S. 39:1–1, or in an attempt to commit an unlawful taking of a motor vehicle he:
>
> (1) inflicts bodily injury or uses force upon an occupant or person in possession or control of a motor vehicle;
>
> (2) threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury;
>
> (3) commits or threatens immediately to commit any crime of the first or second degree; or
>
> (4) operates or causes said vehicle to be operated with the person who was in possession or control or was an occupant of the motor vehicle at the time of the taking remaining in the vehicle.
>
> An act shall be deemed to be "in the course of committing an unlawful taking of a motor vehicle" if it occurs during an attempt to commit the unlawful taking of a motor vehicle or during an immediate flight after the attempt or commission.
>
> b. **Grading.** Carjacking is a crime of the first degree and upon conviction thereof a person may, notwithstanding the provisions of paragraph (1) of subsection a. of *N.J.S.A.* 2C:43–6, be sentenced to an ordinary term of imprisonment between 10 and 30 years. A person convicted of carjacking shall be sentenced to a term of imprisonment and that term of imprisonment shall include the imposition of a minimum term of at least five years during which the defendant shall be ineligible for parole.
>
> [*Ibid.*]

Defendant urges that the trial judge erred in his charge[8] because "[o]nly a finding of purposeful state of mind, i.e., that it

---

[8] We note that the trial judge was requested by the jury to recharge on carjacking. As part of the recharge, the judge stated:

So, ladies and gentlemen, the only scenario by which you may find the defendants either individually or as accomplices of each other with shared criminal intent guilty of carjacking is if the State has proven to you beyond a reasonable doubt, in addition to all the other elements, that the defendant did demand the car keys of Miss Gonzalez and did inflict bodily injury or use force upon her in getting the car keys, it was their purpose to get her car keys to obtain possession of the car.

was the conscious object to take the motor vehicle, could support a conviction of carjacking." We disagree.

Part of the judge's charge included:

[T]he only scenario by which you may find the defendant individually by his own conduct or as an accomplice of each other with shared criminal intent guilt is if the State has proven to you beyond a reasonable doubt, in addition to all the other elements, that the defendants demanded and attempted to take or did take the car keys and in doing so inflicted injury purposely or used force upon her.

. . . .

So remember, here, we are talking about the State alleging that the defendant[s] by their own conduct or as accomplices of each other with shared criminal intent committed an attempt, that is, a substantial step in furtherance of the crime charged, to commit an unlawful taking, as I have defined unlawful, without permission or consent, of a motor vehicle, that at the time they did this they inflicted bodily injury or used force upon Flora Gonzalez as I have defined it, as to the effort, the attempt to secure her car keys, not house keys, not general keys, car keys, for purposes of exercising control and dominion over the automobile. . . . If you do not find that the defendant's purpose either . . . individually or with shared criminal intent as accomplices was not to take the car keys for purposes of taking the car, for example, then you . . . must find the defendants not guilty. . . .

In *State v. Williams, supra,* Judge Baime wrote:

We do not construe *N.J.S.A.* 2C:15-2 as requiring that the defendant use force against an "occupant" of an automobile only when the victim is within the actual structure of the vehicle. The broad aim of the statute is to enhance the punishment applicable to persons who use force or intimidation "to gain possession of [a] motor vehicle."

[*Id.* at 616, 674 A.2d 643 (alteration in original) (quoting Cannel, *New Jersey Criminal Code Annotated,* comment on *N.J.S.A.* 2C:15-2 (1995)).]

In *Williams,* the defendant sought reversal of his carjacking conviction because the victim had already exited the vehicle when the defendant took the victim's keys and car. *Id.* at 615, 674 A.2d 643. We rejected that assertion based on the above reading of the carjacking statute, stating:

We add that defendant's strained reading of the law would yield anomalous results. It would mean that a criminal who places a gun to the head of an unsuspecting victim who is loading groceries into his or her car would not fall within the reach of the statute. We need not describe a litany of similar factual scenarios to illustrate the absurdity of defendant's argument.

[*Id.* at 617, 674 A.2d 643.]

The circumstances here clearly present a scenario which is proscribed by the carjacking statute. A victim alights from her

vehicle in front of her house and two men use force in an attempt to take her car keys intending to steal her car. As noted, the victim testified that her second assailant demanded, "Give me the car keys or we'll kill you." Those threatening words were uttered after the victim was struck twice with a metal object by the first assailant and after she had fallen to the ground.

We expressly reject defendant's additional argument that the trial judge erred when he failed to charge robbery, assault and theft from the person as lesser-included offenses, *N.J.S.A.* 2C:1–8, under the carjacking statute. Defendant did not request any charge encompassing a lesser-included offense. As noted in *State v. Scherzer*, 301 *N.J.Super.* 363, 481, 694 *A.2d* 196 (App.Div.), *certif. denied* 151 *N.J.* 466, 700 *A.2d* 878 (1997),

> When a defendant requests a lesser included offense charge, the judge is obligated to examine the record thoroughly to determine if the rational basis test of *N.J.S.A.* 2C:1–8e has been satisfied. However, when the defendant does not request such a charge, as is the case here, the trial judge does not "have the obligation on its own meticulously to sift through the entire record" to see if the facts and inferences might sustain a particular charge.
>
> [*Ibid.* (quoting *State v. Choice*, 98 *N.J.* 295, 299, 486 *A.2d* 833 (1985)) (other citation omitted).]

Examining the charge as a whole, *see State v. Concepcion*, 111 *N.J.* 373, 376, 545 *A.2d* 119 (1988); *State v. Maldonado*, 137 *N.J.* 536, 579, 645 *A.2d* 1165 (1994), there was no error.

## IV

At the close of the State's case, defendant moved, pursuant to *R.* 3:18–1, for acquittal on the charge of kidnapping, *N.J.S.A.* 2C:13–1, which provides in pertinent part:

> **b. Holding for other purposes.** A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or a substantial distance from the vicinity where he is found, or if he unlawfully confines another for a substantial period, with any of the following purposes:
>
> (1) To facilitate commission of any crime or flight thereafter. . .
>
> [*N.J.S.A.* 2C:13–1.]

Defendant argues that he "could not have been found guilty of kidnapping because the victim was neither removed a substantial

distance nor confined for a substantial period of time." We disagree. We are guided by our Supreme Court's decision in *State v. Masino,* 94 *N.J.* 436, 466 *A.*2d 955 (1983), in which the Court upheld an asportation kidnapping conviction where the victim was dragged out of her car, across a street, and a short distance to a pond. The Court concluded that the "substantial distance" requirement of the statute addresses the risk of increased harm occasioned by the abduction. *Id.* at 438, 466 *A.*2d 955. The Court specifically concluded: "More sensible is the interpretation that views a 'substantial distance' as one that isolates the victim and exposes him or her to an increased risk of harm." *Id.* at 445, 466 *A.*2d 955.

Here, the evidence shows that the victim was dragged twenty-three feet to the end of her building to a small alley. Like *Masino,* the victim here was taken to a more secluded place where the assailants could more easily attack her without being seen. Certainly, giving the State every favorable inference, *see State v. Muniz,* 150 *N.J.Super.* 436, 440, 375 *A.*2d 1234 (App.Div.1977), *certif. denied,* 77 *N.J.* 473, 391 *A.*2d 488 (1978), the motion for acquittal on this count was properly denied.

V

On appeal, defendant contends for the first time that certain comments by the prosecutor in his summation were improper and require reversal as plain error. *R.* 2:10–2. We find this argument totally without merit. *R.* 2:11–3(e)(2).

Defendant also refers to a separate section in the prosecutor's summation as error requiring reversal. We note that defendant did offer a timely objection, which was sustained. In fact, the trial judge specifically and immediately instructed the jury to disregard the prosecutor's comment. Defendant's objection, coupled with the judge's response and specific instruction to the jury, was sufficient to cure any prejudicial impact upon the jury. *See State v. Marshall,* 123 *N.J.* 1, 159, 586 *A.*2d 85 (1991); *State v. Darrian,* 255 *N.J.Super.* 435, 453, 605 *A.*2d 716 (App.Div.), *certif. denied,*

130 *N.J.* 13, 611 *A.*2d 651 (1992); *State v. Reese,* 288 *N.J.Super.* 133, 138, 671 *A.*2d 1112 (App.Div.1996).

## VI

Defendant contends that the trial judge erred when he failed to merge the kidnapping conviction into the carjacking conviction. We disagree.

The criteria for determining issues of merger are set forth in *N.J.S.A.* 2C:1–8, which provides in pertinent part:

**a. Prosecution for multiple offenses; limitation on convictions.** When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:

(1) One offense is included in the other, as defined in subsection d. of this section;

(2) One offense consists only of a conspiracy or other form of preparation to commit the other;

(3) Inconsistent findings of fact are required to establish the commission of the offenses; or

(4) The offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other to prohibit a specific instance of such conduct. . . .

A determination barring multiple convictions shall be made by the court after verdict or finding of guilt.

The underlying issue concerning merger is whether a defendant is placed in double jeopardy, or punished twice for the same crime. *State v. Dillihay,* 127 *N.J.* 42, 48, 601 *A.*2d 1149 (1992). *Dillihay* instructs that the first step in the test of merger is whether the Legislature intended to impose multiple punishments. *Ibid.* If, however, the Legislature's intent is unclear, the next step is to determine whether each offense requires proof of an additional fact that the other does not. *Ibid.*

Here, defendant was not placed in double jeopardy or punished twice for the same crime. Clearly, the Legislature intended to impose separate punishments for these two crimes. Kidnapping and carjacking, under the facts of this case, require proof of an additional fact that the other does not have, that is, they include

unique elements.[9] *See generally State v. Miller,* 108 *N.J.* 112, 116, 527 *A.*2d 1362 (1987). Merger was not necessary.

Defendant also contends that his sentence was excessive and that the court erred in concluding that the aggravating factors clearly outweighed the mitigating factors.

The standard for reviewing sentencing determinations is defined in *State v. Roth,* 95 *N.J.* 334, 471 *A.*2d 370 (1984):

> First, we will always require that an exercise of discretion be based upon findings of fact that are grounded in competent, reasonably credible evidence. . . .
>
> Second, we will always require that the factfinder apply correct legal principles in exercising its discretion. . . .
>
> Third, we will exercise that reserve of judicial power to modify sentences when the application of the facts to the law is such a clear error of judgment that it shocks the judicial conscience.
>
> [*Id.* at 363–64, 471 *A.*2d 370 (citations omitted).]

Here the judge carefully considered the facts adduced at trial and contained in defendant's pre-sentence report. The judge correctly concluded that three aggravating factors applied: *N.J.S.A.* 2C:44–1a(1), "The nature and circumstances of the offense, and the role of the actor therein, including whether or not it was committed in an especially heinous, cruel, or depraved manner"; *N.J.S.A.* 2C:44–1a(3), "The risk that the defendant will commit another offense"; and *N.J.S.A.* 2C:44–1a(9), "The need for deterring the defendant and others from violating the law," and that those aggravating factors clearly outweighed the one mitigating factor, defendant's age.

The judge fully appreciated that carjacking, *N.J.S.A.* 2C:15–2(b), is a crime in the first-degree and requires a court to impose a term of imprisonment which *shall* include a minimum term of at least five years during which a defendant shall be ineligible for parole. Additionally, the court noted that kidnapping, *N.J.S.A.* 2C:13–1(c)(1), is a crime of the first-degree requiring the imposition of an ordinary term of between fifteen and thirty years, with

---

[9] There are factual scenarios where kidnapping and carjacking would merge, e.g. *N.J.S.A.* 2C:15–2a(4). This illustration is not exhaustive.

a presumptive sentence of twenty years. *See N.J.S.A.* 2C:44–1(f)(1)(a).

Here, the judge made correct findings of fact and correctly applied the law. We specifically find that the sentence does not shock the judicial conscience. *See Roth, supra,* 95 *N.J.* at 363–64, 471 *A.*2d 370.

Affirmed.