RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-2784-14T3

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

HUMBERTO GONZALEZ, a/k/a
SANTOS SOLARES, JOSE ROBE,
SANTOS HOMBERTO M., SANTOS
JOSE R.,

 Defendant-Appellant.
_________________________________

 Submitted May 15, 2017 – Decided May 31, 2017

 Before Judges Nugent and Haas.

 On appeal from Superior Court of New Jersey,
 Law Division, Mercer County, Indictment No.
 12-10-1028.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Margaret McLane, Assistant
 Deputy Public Defender, of counsel and on the
 brief).

 Angelo J. Onofri, Mercer County Prosecutor,
 attorney for respondent (Amanda E. Nini,
 Assistant Prosecutor, of counsel and on the
 brief).

PER CURIAM
 On October 19, 2012, a Mercer County grand jury returned a

ten-count indictment charging defendant Humberto Gonzalez with

first-degree kidnapping, N.J.S.A. 2C:13-1(b) (count one); three

counts of first-degree aggravated sexual assault while armed,

N.J.S.A. 2C:14-2(a) (counts two, three, and four); three counts

of first-degree aggravated sexual assault in the course of a

kidnapping, N.J.S.A. 2C:14-2(a)(3) (counts five, six, and seven);

third-degree criminal restraint, N.J.S.A. 2C:13-2(a) (count

eight); fourth-degree possession of a weapon (knife), N.J.S.A.

2C:39-5(d) (count nine); and third-degree possession of a weapon

(knife) for an unlawful purpose, N.J.S.A. 2C:39-4(d) (count ten).

 At the trial, the trial judge granted the State's motion to

dismiss counts three, four, six, and seven of the indictment. At

the conclusion of the trial, the jury found defendant guilty of

first-degree kidnapping (count one); second-degree sexual assault

as a lesser-included offense of aggravated sexual assault while

armed (count two); first-degree aggravated sexual assault in the

course of a kidnapping (count five); and third-degree criminal

restraint (count eight). The jury found defendant not guilty of

the two weapon possession charges under counts nine and ten.

 On November 14, 2014, a different trial judge merged counts

five and eight into count one and sentenced defendant to twenty-

five years in prison, subject to the 85% parole ineligibility

 2 A-2784-14T3
provisions of the No Early Release Act, N.J.S.A. 2C:43-7.2. The

judge sentenced defendant to a concurrent eight-year term on count

two, ordered him to comply with all Megan's Law requirements, and

imposed parole supervision for life. This appeal followed.

 On appeal, defendant raises the following contentions:

 POINT I

 THE STATE FAILED TO PRESENT SUFFICIENT
 EVIDENCE THAT DEFENDANT MOVED THE VICTIM A
 SUBSTANTIAL DISTANCE OR CONFINED HER FOR A
 SUBSTANTIAL PERIOD, REQUIRING REVERSAL OF
 DEFENDANT'S CONVICTIONS FOR KIDNAPPING AND
 SEXUAL ASSAULT IN THE COURSE OF A KIDNAPPING.

 POINT II

 DEFENDANT WAS PREJUDICED BY THE TRIAL COURT'S
 FAILURE TO CHARGE THE JURY REGARDING THE
 PROPER ASSESSMENT OF THE STATEMENTS ALLEGEDLY
 MADE BY HIM. (Not Raised Below).

 POINT III

 THE PROSECUTOR'S IMPROPER BURDEN-SHIFTING IN
 SUMMATION VIOLATED DEFENDANT'S RIGHT TO A FAIR
 TRIAL AND REQUIRES REVERSAL OF HIS
 CONVICTIONS. (Not Raised Below).

 POINT IV

 THE 25-YEAR SENTENCE WITH AN 85% PAROLE
 DISQUALIFIER IS EXCESSIVE.

 After reviewing the record in light of the contentions

advanced on appeal, we affirm.

 3 A-2784-14T3
 I.

 We derive the following facts from the evidence produced by

the parties at trial.

 The victim, M.L.,1 frequently used a bike path that was

located about three or four blocks from her home to walk and ride.

In the afternoon of May 22, 2005, M.L. and her husband, R.L., took

a thirty-mile tandem bike ride along the path. That evening, she

and her husband went to a dance recital.

 When the couple returned home between 10:30 and 10:45 p.m.,

M.L. decided to take a walk by herself along the bike path, as she

usually did twice a week "just to relax and unwind, especially

when the weather was nice[,]" as it was on the evening of May 22.

As she set out for her walk at approximately 11:00 p.m., M.L.

anticipated that she would be away from home for about fifteen

minutes.

 However, as she waked along the path, M.L. suddenly heard a

rustle from some bushes and a man came out and pushed her to the

ground. M.L. testified that the man had a closed switchblade

knife and told her "just do it or I'll hurt you." There were no

lights on the bike path and M.L. was not able to see her assailant's

face at that time.

1
 We use initials to protect the privacy of the victim.

 4 A-2784-14T3
 M.L. screamed, "No, no, no." To silence her, the man pushed

M.L. down on her knees, put his hands around her neck, and began

dragging her on her stomach toward a playground.2 Although M.L.

estimated that the man only dragged her between ten to twelve

feet, an agent from the Mercer County prosecutor's office later

measured the distance as seventy-eight feet, six inches.

 The man dragged M.L. off the bike path and into a fenced-in

playground. Once he got M.L. off the path, the man threw her on

a slide, showed her the knife, and placed it next to the right

side of her head. M.L. testified that she caught a glimpse of her

assailant as he began kissing her face. She believed the man was

Hispanic because he kept saying, "Lo siento mama" to her in

Spanish, which she understood to mean "I'm sorry mom."

 The man pulled down M.L.'s tights and underwear and pushed

her skirt up. He then penetrated her vagina with his penis. M.L.

testified that the man penetrated her three different times, but

did not ejaculate the first or second times he assaulted her.

After he ejaculated after the third assault, defendant got off

M.L. She stood and pulled her underwear and tights up. M.L.

estimated that the assault lasted about twenty minutes, although

"[i]t felt longer. It felt like forever."

2
 M.L. was fifty-three years old in May 2005. She was approximately
five-feet, two inches tall and only weighed about 125 pounds.

 5 A-2784-14T3
 M.L. had lost one of her shoes on the bike path as the man

was dragging her to the playground. She asked him to help her

find the shoe. The man went outside the gate "and down the path

a little and he found [M.L.'s] shoe" and returned it to her. After

she got the shoe, M.L. began to walk home slowly so she would not

alert the man that she was going to immediately report the assault.

The man left in the other direction.

 About seven minutes later, M.L. got home and told her husband

what had happened. R.L. immediately drove M.L. to the hospital

emergency room. Later that evening, a nurse conducted a sexual

assault examination, which included swabbing M.L.'s vagina for

seminal fluid. M.L.'s clothes were also taken and preserved as

evidence. The nurse's examination revealed that M.L. had vaginal

tears and internal abrasions, as well as bruises and cuts on her

knees, throat, buttocks, and back.

 M.L. subsequently went to the police station on three

occasions to attempt to identify her assailant from photographs.

However, she was unable to do so. In January 2010, however, the

police learned that the DNA found in the suspect's semen the nurse

collected from M.L. matched defendant's DNA. At trial, the State

presented the testimony of an expert forensic scientist confirming

this match.

 6 A-2784-14T3
 At trial, defendant asserted that he was seventeen years old

in May 2005,3 and was working fourteen hours a day as a cook in a

restaurant. Defendant testified that he was walking home from

work along the bike path around 11:00 p.m. on May 22, 2005 because

he thought it was unsafe to walk on the nearby streets. As he

walked, defendant stated that M.L. approached him and asked for a

cigarette. Defendant asserted that M.L. then asked defendant

where he was going and told him that "she wanted . . . to have sex

with" him.

 Defendant alleged he was reluctant to have sex with M.L., but

she began to hug and kiss him. At that point, defendant stated

that he and M.L. were already in the playground. They walked to

the slide and defendant asserted that M.L. began unbuckling his

pants. However, defendant stopped her, removed his own pants, and

M.L. "took off hers." Defendant alleged that he had consensual

sex with M.L. on the platform of the slide and that he ejaculated

at least twice during the approximately fifteen-minute encounter.

3
 Defendant is not a resident of the United States. At trial, he
asserted that he was born in 1987 and was seventeen years old in
May 2005. In connection with two unrelated offenses with which
he was charged in 2005, however, defendant gave authorities a 1984
date of birth. That would have made him twenty-one years old at
the time of the May 22, 2005 assault. Defendant explained the
discrepancy by asserting that he was "very drunk" when he
originally told the police he was born in 1984 when he was arrested
for the unrelated offenses.

 7 A-2784-14T3
 At some point, defendant claimed that M.L. told him "to be

quiet" because someone was walking along the bike path. About

three or four minutes later, defendant told M.L. he had to leave.

He testified that M.L. kissed him goodbye and they both left the

playground. Defendant denied having a knife, threatening M.L.,

dragging her along the ground, or sexually assaulting her.

 II.

 "A person is guilty of kidnapping if he [or she] unlawfully

removes another . . . a substantial distance from the vicinity

where he [or she] is found" with the purpose "[t]o facilitate

commission of any crime. . . ." N.J.S.A. 2C:13-1(b)(1). In Point

I of his brief, defendant argues that "the State failed to present

sufficient evidence that [he] moved the victim a substantial

distance" and, therefore, he should not have been found guilty of

kidnapping and sexual assault in the course of a kidnapping. We

disagree.

 As our Supreme Court has consistently held, the "substantial

distance" element of N.J.S.A. 2C:13-1(b)(1) is not defined solely

by "a linear measurement" of the distance a defendant moves the

victim. State v. Jackson, 211 N.J. 394, 415 (2012) (quoting State

v. Masino, 94 N.J. 436, 445 (1983)). Rather, the term "substantial

distance" has been "defined . . . as one that 'isolates the victim

 8 A-2784-14T3
and exposes him or her to an increased risk of harm.'" Ibid.

(quoting Masino, supra, 94 N.J. at 445).

 For example, in Masino, the Court held that although the

defendant did not move the victim very far, the "substantial

distance" element was still met because the defendant isolated the

victim by taking her clothing, thereby impeding her ability to

"call attention to her plight." Masino, supra, 94 N.J. at 447.

Similarly, in State v. Matarama, we upheld the defendant's

conviction for kidnapping in a case where the victim was dragged

twenty-three feet into an alley, which made it more difficult for

the attack to be observed by passers-by. Supra, 306 N.J. Super.

6, 22 (App. Div. 1997), certif. denied, 153 N.J. 50 (1998).

 Applying these principles here, there was clearly sufficient

evidence in the record to support defendant's kidnapping and sexual

assault in the course of a kidnapping convictions. Defendant

dragged M.L. seventy-eight feet, six inches off a bike path into

a fenced playground. Not only was this a "substantial distance"

by any reasonably objective standard, defendant isolated his

victim by moving her to a more secluded area, thus making it easier

for him to complete his assault without being detected. Therefore,

we reject defendant's contention on this point.

 9 A-2784-14T3
 III.

 As noted above, M.L. testified that defendant kept repeating

"lo sienta mama" to her during the attack. In Point II of his

brief, defendant argues that the trial judge erred by failing to

give the jury a sua sponte Hampton4 and Kociolek5 charge concerning

this statement. Again, we disagree.

 Because defendant is raising this contention for the first

time on appeal, he must establish that the error about which he

complains rises to the level of plain error, that is, it had the

capacity to result in the jury reaching a decision it might

otherwise not have made. R. 2:10-2. Defendant has failed to meet

this standard.

 In Hampton, the Supreme Court held that when a defendant's

confession is admitted in evidence, the judge shall instruct the

jurors "that they should decide whether . . . the defendant's

confession is true," and if they conclude that it is "not true,

then they must . . . disregard it for purposes of discharging

their functions as fact finders." Supra, 61 N.J. at 272. Here,

defendant did not give a statement to the police and, therefore,

a Hampton charge concerning the phrase he repeated to M.L. during

4
 State v. Hampton, 61 N.J. 250 (1972).
5
 State v. Kociolek, 23 N.J. 400 (1957).

 10 A-2784-14T3
the assault was not required. State v. Baldwin, 296 N.J. Super.

391, 398 (App. Div.) (holding that "a special cautionary

instruction is not required when a defendant has allegedly made a

voluntary inculpatory statement to a non-police witness without

being subjected to any form of physical or psychological

pressure"), certif. denied, 149 N.J. 143 (1997).

 The trial judge also did not err by failing to give the jury

a sua sponte Kociolek charge. The Kociolek charge pertains to the

reliability of an inculpatory statement made by a defendant to any

witness. Kociolek, supra, 23 N.J. at 421-23. As explained in

Kociolek, the jury should be instructed to "'receive, weigh and

consider such evidence with caution,' in view of the generally

recognized risk of inaccuracy and error in communication and

recollection of verbal utterances and misconstruction by the

hearer." Id. at 421. However, a Kociolek charge need not be

provided to the jury where "an alleged oral inculpatory statement

was not made in response to police questioning, and there is no

genuine issue regarding its contents, . . . because the only

question the jury must determine is whether the defendant actually

made the alleged inculpatory statement." Baldwin, supra, 296 N.J.

Super. at 401-02.

 Although our Supreme Court has directed the Kociolek charge

to be given whether or not specifically requested by a defendant,

 11 A-2784-14T3
it has also determined that the failure to give this charge is not

plain error per se. State v. Jordan, 147 N.J. 409, 428 (1997)

(noting it would be "a rare case where failure to give a Kociolek

charge alone is sufficient to constitute reversible error"). We

have held that "[w]here such a charge has not been given, its

absence must be viewed within the factual context of the case and

the charge as a whole to determine whether its omission was capable

of producing an unjust result." State v. Crumb, 307 N.J. Super.

204, 251 (App. Div. 1997) (finding "no reported case in which a

failure to include a Kociolek charge has been regarded as plain

error"), certif. denied, 153 N.J. 215 (1998).

 Here, defendant did not make the statement in response to

police questioning and there was no dispute as to the content of

the statement at trial. In addition, defense counsel thoroughly

cross-examined M.L. concerning her allegations, and the trial

judge carefully instructed the jurors how to assess the credibility

of the witnesses. In addition, the judge gave a "false in one,

false in all" charge, and told the jurors that if "any witness

. . . willfully or knowingly testified falsely to any material

facts in this case with intent to deceive[,]" the jurors could

"give such weight to his or her testimony as you may deem it is

entitled. You may believe some of it or you may, in your

discretion, disregard all of it."

 12 A-2784-14T3
 Given the trial judge's extensive credibility instructions,

we conclude that the issue of the reliability of defendant's

statement to M.L. was "thoroughly and sufficiently placed before

the jury." State v. Feaster, 156 N.J. 1, 73 (1998), cert. denied,

532 U.S. 932, 121 S. Ct. 1380, 149 L. Ed. 2d 306 (2001). Thus,

the judge's failure to give a Kociolek instruction was not plain

error. Id. at 72-73 (finding no plain error even though the

defendant's incriminating oral statements were "at the heart of

the State's case against defendant").

 IV.

 Next, in Point III of his brief, defendant argues that the

prosecutor's remarks during summation denied him a fair trial.

This argument also lacks merit.

 Prosecutorial misconduct is not a basis for reversal unless

the conduct was so egregious that it deprived the defendant of a

fair trial. State v. DiFrisco, 137 N.J. 434, 474 (1994), cert.

denied, 516 U.S. 1129, 116 S. Ct. 949, 133 L. Ed. 2d 873 (1996).

Considerable leeway is afforded to prosecutors in presenting their

arguments at trial "as long as their comments are reasonably

related to the scope of the evidence presented." State v. Frost,

158 N.J. 76, 82 (1999). When, as here, the defendant fails to

object to the prosecutor's comments at trial, the allegedly

"improper remarks . . . will not be deemed prejudicial." State

 13 A-2784-14T3
v. Timmendequas, 161 N.J. 515, 576 (1999), cert. denied, 534 U.S.

858, 122 S. Ct.136, 151 L. Ed. 2d 89 (2001).

 Defendant first asserts that the prosecutor improperly

attempted to shift the burden of proof to him by telling the jury

in the portion of her summation where she discussed an abrasion

to M.L.'s knee that "[t]here is no explanation as to how that cut

got there, how the bruises and abrasions got there by the

[d]efense." However, even though defendant's attorney did not

object to the prosecutor's comment, the trial judge addressed it

on his own motion and issued a forceful and comprehensive curative

instruction to the jury at the conclusion of the summations.

 The trial judge instructed the jury as follows:

 Ladies and gentlemen, at one point during
 her closing[,] [the prosecutor], in speaking
 about the cut on the knee, indicated that the
 [d]efense had offered no explanation, no
 contrary explanation to the cut on the knee.
 I simply want to instruct you at this point
 that the State has the burden of proving [its]
 charges beyond a reasonable doubt and that a
 defendant in a criminal case has no obligation
 to offer any proof whatsoever relating to his
 innocence.

The judge provided an additional instruction during his final

charge to the jury on this point. The judge reminded the jury

that "[t]he burden of proving each element of a charge beyond a

reasonable doubt rests upon the State and that burden never shifts

to the defendant. The defendant in a criminal case has no

 14 A-2784-14T3
obligation or duty to prove his innocence or offer any proof

relating to his innocence."

 We presume that the jury followed the trial judge's

comprehensive instructions on the State's burden of proof. State

v. Smith, 212 N.J. 365, 409 (2012) (citing State v. Loftin, 146

N.J. 295, 390 (1996)), cert. denied, ___ U.S. ___, 133 S. Ct.

1504, 185 L. Ed. 2d 558 (2013). Thus, we discern no basis for

disturbing the jury's verdict based upon the prosecutor's brief

comment.

 Defendant also complains that the prosecutor made the

following comment to the jury during her summation:

 Defendant's version of what happened on May
 22[,] 2005 does not make sense because it is
 a story. It is a fabrication. It is a lie.
 A lie that was made up in desperation by a man
 whose DNA was found five years after this
 brutal attack, this rape of this woman. How
 could he explain the evidence? How could he
 explain the DNA? The answer is clear. He has
 to convince you, the jury[,] that the sex was
 consensual.

However, the prosecutor's remarks challenging defendant's account

of the incident were not improper. Rather, they constituted

appropriate comment on defendant's testimony and the defense's

overall strategy of attempting to portray the incident as a

consensual sexual encounter initiated by M.L. in which defendant

 15 A-2784-14T3
was a reluctant participant. Therefore, we reject defendant's

contention on this point.

 V.

 Finally, in Point IV of his brief, defendant argues that his

sentence was excessive. We disagree.

 Trial judges have broad sentencing discretion as long as the

sentence is based on competent credible evidence and fits within

the statutory framework. State v. Dalziel, 182 N.J. 494, 500

(2005). Judges must identify and consider "any relevant

aggravating and mitigating factors" that "are called to the court's

attention[,]" and "explain how they arrived at a particular

sentence." State v. Case, 220 N.J. 49, 64-65 (2014) (quoting

State v. Blackmon, 202 N.J. 283, 297 (2010)). "Appellate review

of sentencing is deferential," and we therefore avoid substituting

our judgment for the judgment of the trial court. Id. at 65;

State v. O'Donnell, 117 N.J. 210, 215 (1989); State v. Roth, 95

N.J. 334, 365 (1984).

 We are satisfied that the sentencing judge made findings of

fact concerning aggravating and mitigating factors6 that were based

6
 In a supplemental letter brief submitted pursuant to Rule 2:6-
11(d), defendant cites the Supreme Court's recent decision in
State v. Zuber, 227 N.J. 422, 448 (2017). In that case, the Court
held that before imposing a sentence upon a juvenile that is "the
practical equivalent of life without parole," the judge must

 16 A-2784-14T3
on competent and reasonably credible evidence in the record, and

applied the correct sentencing guidelines enunciated in the Code.

Case, supra, 220 N.J. at 65; O'Donnell, supra, 117 N.J. at 215-

16. Accordingly, we discern no basis to second-guess the sentence.

 Affirmed.

consider the defendant's "youth and its attendant characteristics"
as set forth in Miller v. Alabama, 567 U.S. 460, 132 S. Ct. 2455,
183 L. Ed. 2d 407 (2012). Here, however, the sentencing judge
considered defendant's purported age at the time of the offense,
and also did not impose a sentence that was the "practical
equivalent of life without parole." Ibid.

 17 A-2784-14T3