676 A.2d 545

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. CAMERON JACK, DEFENDANT–RESPONDENT.

Argued February 26, 1996—Decided May 29, 1996.

Paul H. Heinzel, Deputy Attorney General, argued the cause for appellant (Deborah T. Poritz, Attorney General of New Jersey, attorney).

Bernadette N. De Castro, Assistant Deputy Public Defender, argued the cause for respondent (Susan L. Reisner, Public Defender, attorney; Ms. De Castro and Jane E. Haburay; designated counsel, on the briefs).

The opinion of the Court was delivered by

O'HERN, J.

This appeal concerns the standard that should govern on direct appeal the assessment of a claim of ineffective assistance of counsel in the context of a juvenile waiver proceeding. We hold that to secure a hearing on the claim, a juvenile must make a prima facie showing that there was genuine evidence of the statutorily-relevant potential for rehabilitation that was not presented to the juvenile court due to the ineffective assistance of counsel. If such a showing is made, the appellate court may order a remand to the juvenile court for further proceedings to assess the attorney's reasons for not providing the evidence, and whether there was any reasonable likelihood that the waiver decision would have been different had the evidence been presented. Only after both tests have been met should there be a new plenary hearing on waiver. In this case, we find the evidence to have been marginally sufficient to justify a limited remand. We modify the scope of the remand in accordance with the terms of this opinion.

## I

On May 6, 1992, a young woman withdrew cash from an automatic teller machine at a bank in Perth Amboy. She returned to her car and, while counting her money, was approached by two young men. One stood by as the other held a gun to the woman's head and demanded her money. She handed over her money and the bank card. The gunman threw the bank card back at the woman and the two suspects fled in a small car. The woman was able to take down the license number of the car and to see that there were two female passengers in the back seat. She flagged down a police car and told the officer that she had been robbed. She gave the officer a description of her assailants and their female passengers, the car, including its license plate, and the direction in which the car was headed. An all-points teletype notified all state police departments to be on the alert to apprehend the suspects. Within hours, a Linden police officer stopped a car that matched the description provided by the victim of the

robbery. The officer searched the car and located in the passenger compartment what appeared to be a small, automatic pistol. It was actually a tear gas gun. The officer placed all four occupants of the car under arrest. Perth Amboy officers then arrived and transported the suspects to police headquarters in Perth Amboy.

The victim was also brought to Perth Amboy police headquarters, where she identified the two males as the men who had robbed her. She gave a statement implicating Cameron Jack as the one who had been watching while the other suspect placed the gun to her head.

Shortly before his sixteenth birthday, Jack was charged with juvenile delinquency for acts that would constitute armed robbery, assault, possession of a weapon for an unlawful purpose, and unlawful possession of a weapon if committed by an adult. The charges were made in Essex County, the county of the juvenile's residence. *R.* 5:19–1. The Superior Court, Chancery Division, Family Part, held a hearing pursuant to *N.J.S.A.* 2A:4A–26 to determine whether Jack should be tried as an adult.[1] The hearing was in two phases.

*N.J.S.A.* 2A:4A–26 of the New Jersey Code of Juvenile Justice creates a presumption that the Family Part shall transfer jurisdiction of a juvenile aged fourteen or over to an adult court and prosecuting authority if it finds probable cause to believe that the juvenile has committed any of certain enumerated serious offenses denoted in our cases as "Chart 1 offenses." *State v. R.G.D.*, 108 *N.J.* 1, 12, 527 *A.*2d 834 (1987). Robbery is a Chart 1 offense. Jurisdiction may not be transferred, however, if the juvenile can show that the probability of his or her rehabilitation before the age of nineteen substantially outweighs the reasons for a waiver. *Ibid.*

---

[1] References in the opinion to the Juvenile Court or Family Court refer to the Superior Court, Chancery Division, Family Part.

At the first phase of the waiver hearing on October 29, 1992, the Family Part addressed the question of whether there existed probable cause to believe that defendant had committed one of the enumerated offenses. Based on the evidence, the court made a preliminary finding that sufficient reason existed to believe that Jack had been involved in an armed robbery. The court held the second phase of the waiver hearing on December 17, 1992, to determine whether the probability of defendant's rehabilitation by age nineteen outweighed the reasons for waiver. This hearing prompts the claim of ineffective assistance of counsel. Jack's counsel presented no psychiatric or psychological evidence of the juvenile's potential for rehabilitation at the hearing. The attorney called no witnesses and limited his presentation to a summation emphasizing that "the nature of the incident, although on its [face] appearing to be serious, was not one where we had an actual gun involved," and that "the jurisdictional aspect that the matter, I believe, is one that occurred in Middlesex County," arguing presumably that the waiver hearing should have been held in Middlesex, not Essex. On the basis of this record, the Family Part concluded that, in light of the presumption favoring waiver and the absence of any showing of a possibility of rehabilitation, Jack should be treated as an adult.

The case was transferred to the Law Division in Middlesex County and Jack pled guilty to second-degree conspiracy to commit armed robbery, reserving his right to challenge the jurisdictional waiver. The court sentenced Jack to an indeterminate term not to exceed five years at the Garden State Youth Correctional Facility, a sentence that he has served. Jack has pursued his appeal, contending that he was denied effective assistance of counsel at the waiver hearing. The Appellate Division agreed that the performance of Jack's counsel was deficient and remanded the case for a new waiver hearing in the Family Part. 281 *N.J.Super.* 404, 657 *A.*2d 1231 (1995). The State petitioned for review of that decision. We granted certification. 142 *N.J.* 517, 665 *A.*2d 1110 (1995).

## II

In *Strickland v. Washington,* 466 *U.S.* 668, 104 *S.Ct.* 2052, 80 *L. Ed.*2d 674 (1984), the Supreme Court set forth the constitutional threshold for vindication of the Sixth Amendment's guarantee to every citizen of the assistance of counsel in the defense of all criminal prosecutions. "An accused is entitled to be assisted by an attorney, whether retained or appointed, who plays the role necessary to ensure that the trial is fair." *Id.* at 685, 104 *S.Ct.* at 2063, 80 *L.Ed.*2d at 692. In other words, "the right to counsel is the right to the effective assistance of counsel." *Id.* at 686, 104 *S.Ct.* at 2063, 80 *L.Ed.*2d at 692 (quoting *McMann v. Richardson,* 397 *U.S.* 759, 771 n. 14, 90 *S.Ct.* 1441, 1449 n. 14, 25 *L. Ed.*2d 763, 773 n. 14 (1970)).

Adequate assistance of an attorney is measured according to whether the counsel has professional skills comparable to other practitioners in the field. This has been equated with a standard of "reasonable competence." *State v. Fritz,* 105 *N.J.* 42, 53, 519 *A.*2d 336 (1987). " 'Reasonable competence' does not require the best of attorneys, but certainly not one so ineffective as to make the idea of a fair trial meaningless." *State v. Davis,* 116 *N.J.* 341, 351, 561 *A.*2d 1082 (1989).

Although those principles have developed in the context of criminal jury trials, they apply equally in the context of juvenile waiver proceedings. It has long been settled that a potential loss of liberty involves the loss of a fundamental right entitling one to the assistance of counsel. *Strickland, supra,* 466 *U.S.* at 684, 104 *S.Ct.* at 2063, 80 *L. Ed.*2d at 691; *State v. Fritz, supra,* 105 *N.J.* at 50, 519 *A.*2d 336; *State v. Ferguson,* 255 *N.J.Super.* 530, 539, 605 *A.*2d 765 (App.Div.1992), *certif. denied,* 138 *N.J.* 265, 649 *A.*2d 1285 (1994). Our Legislature has accorded juveniles all rights guaranteed to an adult charged with a crime. *Ferguson, supra,* 255 *N.J.Super.* at 537, 605 *A.*2d 765.

The United States Supreme Court has developed a two-part test for determining whether counsel's assistance was so

defective as to require the reversal of a conviction. This test requires the defendant to identify specific acts or omissions that are outside the "wide range of reasonable professional assistance" and to show prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland, supra,* 466 *U.S.* at 689, 694, 104 *S.Ct.* at 2065, 2068, 80 *L. Ed.*2d at 694, 698. That standard also applies to the State Constitution's guarantee of effective assistance of counsel. *Fritz, supra,* 105 *N.J.* at 58, 519 *A.*2d 336. The test recognizes that when the level of counsel's participation makes the idea of a fair trial a nullity prejudice need not be shown, it is presumed. *United States v. Cronic,* 466 *U.S.* 648, 659, 104 *S.Ct.* 2039, 2047, 80 *L. Ed.*2d 657, 668 (1984) (decided the same day as *Strickland* ). If this category of ineffective assistance is established, a defendant is not required to show prejudice. That degree of deficient performance is tantamount to a complete denial of counsel. *Ibid.*

On the other hand, under *Strickland,* if counsel's representation merely falls below the standard of reasonable competence, a reversal is required only if the court finds prejudice to defendant. Thus, in *Burger v. Kemp,* 483 *U.S.* 776, 794–95, 107 *S.Ct.* 3114, 3126, 97 *L. Ed.*2d 638, 657 (1987), although observing that counsel did not investigate evidentiary material to present in mitigation of defendant's sentencing phase, the Court did not invalidate the conviction because the decision not to investigate was a strategic decision supported by "reasonable professional judgment" that such investigation "would not have minimized the risk of the death penalty." *See also Government of the Virgin Islands v. Weatherwax,* 77 *F.*3d 1425, 1435 (3d Cir.1996) (holding that defense counsel's racially-motivated decision not to investigate possibility of tainted jury "fell squarely within the realm of strategy and tactics" and thus did not amount to ineffective assistance of counsel in violation of Sixth Amendment).

Applying those principles to this case requires us first to consider whether the quality of the juvenile's representation was

so deficient that, under *Cronic, supra,* prejudice must be presumed as a matter of law.

In *State v. Scott,* 141 *N.J.* 457, 465, 661 *A.*2d 1288 (1995), the Court explained that even a well-documented showing of the probability of rehabilitation prior to a juvenile's reaching the age of nineteen will not foreclose waiver. The reason is that juveniles charged with a Chart 1 enumerated offense are " 'the primary candidates for waiver to the adult courts' because the statute has created a 'presumption' of waiver for such juveniles." *Id.* at 463, 661 *A.*2d 1288 (quoting *R.G.D., supra,* 108 *N.J.* at 11, 527 A.2d 834) (citations omitted). As noted, to overcome that presumption of waiver, the juvenile must show that the probability of rehabilitation "substantially outweighs the reasons for waiver." *Scott, supra,* 141 *N.J.* at 464, 661 *A.*2d 1288 (quoting *N.J.S.A.* 2A:4A–26(a)(3)). In *Scott,* the juvenile court found that the presumption of waiver, the brazen and violent nature of the juvenile's current crimes, the need to protect the public and the defendant's past record established an adequate basis to support the court's determination that the reasons for waiver outweighed any probability of rehabilitation.

It is especially difficult to assess the issue of a *Cronic* presumption in the context of a juvenile waiver proceeding. The two presumptions (the *Cronic* presumption of prejudice and the statutory presumption in favor of waiver) tend to balance each other out. In *State v. Savage,* 120 *N.J.* 594, 619, 577 *A.*2d 455 (1990), after a remand to assess the reasons offered for counsel's decision, we found it "incomprehensible that [defendant's counsel at trial] never even considered a psychiatric defense" in light of evidence "strongly indicat[ing] that [defendant] may have been suffering from mental problems." We determined that the lawyer's rationale was completely unacceptable and failed to demonstrate minimal competence. His decision was not a strategic decision but a total lack of decision. Permissible trial strategy can never include the failure to conduct a substantial investigation into any of the juvenile's plausible lines of defense.

We find this record, however, inadequate to evaluate the effectiveness of counsel regarding trial counsel's failure to produce any evidence of rehabilitation. *Scott, supra,* presents an example of a well-documented case for rehabilitation. There, the juvenile presented evidence from a psychiatrist that the mental illness that had contributed to his criminal activities could be brought under control before age nineteen and that he could be rehabilitated through the services and procedures available to the juvenile court. No effort at such documentation was made by Jack's counsel.

Ordinarily we will require that before an appellate court directs a remand to consider a claim of such ineffective assistance of counsel, the defendant shall make a showing that he could have presented a case for rehabilitation. Defendant has attempted to piece together a case for rehabilitation from various record matters to be discussed later in this opinion. Because of the age of this case, we are willing to permit it to proceed to the next phase on remand to the juvenile court. That remand should focus on two considerations: whether the basis for the tactics and strategy that motivated the juvenile's counsel to refrain from presenting a case of potential for rehabilitation were acceptable and whether any prejudice ensued. *"Cronic* represents a narrow exception which the Supreme Court has carved out of the general rule that a petitioner claiming ineffective assistance of counsel must demonstrate that he was prejudiced by specific alleged errors in his counsel's performance. Consequently, the burden of proof under *Cronic* is a very heavy one." *Stone v. Dugger,* 837 *F.*2d 1477, 1479 (11th Cir.1988) *(per curiam )* (quotation and citation omitted), *cert. denied,* 489 *U.S.* 1071, 109 *S.Ct.* 1354, 103 *L. Ed.*2d 821 (1989). Thus, the Eleventh Circuit has concluded that it " 'becomes evident that *Cronic* 's presumption of prejudice applies to only a very narrow spectrum of cases where the circumstances leading to counsel's ineffectiveness are so egregious that the defendant was in effect denied any meaningful assistance at all.' " *Stano v. Dugger,* 921 *F.*2d 1125, 1153 (11th Cir.) (quoting *Chadwick v. Green,* 740 *F.*2d 897, 901 (11th Cir.1984) (footnote omitted), *cert.*

*denied sub nom., Stano v. Singletary,* 502 *U.S.* 835, 112 *S.Ct.* 116, 116 *L. Ed.*2d 85 (1991).

In this case, the scope of the remand hearing should, as in *Savage, supra,* explore the rationale for the decision of counsel at the waiver hearing to offer no evidence of a potential for rehabilitation. The court shall assess whether the rationale is acceptable as an informed choice or unacceptable as a total lack of decision. *State v. Dixon,* 125 *N.J.* 223, 261, 593 *A.*2d 266 (1991). *State v. Bryant,* 237 *N.J.Super.* 102, 567 *A.*2d 212 (App.Div.1988), *rev'd on other grounds,* 117 *N.J.* 495, 569 *A.*2d 770 (1989), illustrates that kind of unacceptable choice by counsel.

If the court finds that latter type of rationale, it should then assess whether the *Cronic* presumption should apply, *i.e.,* whether counsel's ineffectiveness was so egregious that prejudice should be presumed. As noted, *Scott, supra,* undermines an automatic application of a *Cronic* presumption to the outcome of a waiver hearing for a Chart 1 offender. The State thus insists that prejudice simply cannot be presumed in the face of such a heavy burden and the need for such particular proofs.

There must be an assessment of the evidence that competent counsel could have presented. Defendant has suggested in his papers that there were doctors, teachers, probation officers and family members who could have testified on his behalf. In addition, he asserts that he was not informed of his right to testify on his own behalf, presumably regarding his potential for rehabilitation. The only proffered expert evidence is in the form of a letter from a psychiatrist who attempted to treat Jack at the Middlesex County Youth Detention Facility that assesses his psychiatric well-being but does not directly discuss his potential for rehabilitation.

Defendant also relies on the materials contained in the presentence report that were accepted by the trial court in Middlesex County and led it to conclude that the mitigating factors substantially outweighed the aggravating factors, authorizing a sentence one degree lower than that for which he had been indicted. Based

on those materials, the trial court stated: "He's got a bright future ahead of him. He's not a bad person but he's done some terrible things [a]nd he's got to answer for the terrible things he's done."

*State v. Ferguson, supra,* 255 *N.J.Super.* 530, 605 *A.*2d 765 (App.Div.1992), *certif. denied,* 138 *N.J.* 265, 649 *A.*2d 1285 (1994), illustrates the type of evidence that does, indeed, establish prejudice due to ineffective assistance of counsel. Counsel had presented only a "net opinion" from a psychiatrist. The court noted "several examples, among many, from the record of what could have been done," referring to testimony from a senior corrections official that "this youngster [Ferguson] represents one of the most appropriate candidates for being treated as a juvenile of any that we have seen. I cannot recall another juvenile offender who had the potential for being rehabilitated that James [Ferguson] does in my over twenty years with the Department of Corrections." *Id.* at 542, 605 *A.*2d 765.

The countervailing considerations on Jack's potential for rehabilitation consist of his rather extensive record of juvenile delinquency involving auto and other theft, supplemented after release on these charges by his 1994 conviction of another theft offense. We do not intend that there be a trial within a trial on the rehabilitation evidence.

Based on its assessment of the defendant's preliminary showing that he could have been rehabilitated under the processes available to the juvenile court and the countervailing evidence, the juvenile court should next assess whether there was a reasonable likelihood of retention of the matter in the juvenile court. In this first phase the court will not decide the issue of waiver, but only whether there was a reasonable likelihood that the waiver decision would have been different had Jack's counsel made a strong showing of potential for rehabilitation. If there were such a likelihood, the court should then proceed to the final phase and allow the juvenile to present the evidence that would have supported his potential for rehabilitation. Rule 5:3–3 authorizes the

juvenile court, in its discretion, to appoint an expert whenever it determines that the disposition of an issue would be assisted by expert opinion. *State v. R.G.D., supra,* 108 *N.J.* at 18, 527 *A.*2d 834.

Thus, not every claim of ineffective assistance of counsel at a juvenile waiver hearing requires a new waiver hearing. The usual standards of the *Strickland/Fritz* test for measuring a claim of ineffective assistance of counsel shall apply. If a prima facie showing of ineffective assistance of counsel is shown, a hearing may be required to assess the two aspects of such a claim, ineffectiveness and prejudice. *State v. Precipose,* 129 *N.J.* 451, 463–64, 609 *A.*2d 1280 (1992). Because the *Cronic* presumption of prejudice does not apply automatically in Chart 1 juvenile waiver cases, a juvenile claiming the ineffective assistance of waiver counsel must show that expert or otherwise qualified testimony was available to establish a specific plan of rehabilitation such that there was "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Fritz, supra,* 105 *N.J.* at 60–61, 519 *A.*2d 336 (quoting *Strickland, supra,* 466 *U.S.* at 694, 104 *S.Ct.* at 2068, 80 *L. Ed.*2d at 698).

If the juvenile makes such a showing, the remand court will consider the offender's case as it would have if effective counsel had been provided. On the other hand, if in the opinion of the court the best efforts of competent counsel would not have prevented waiver because the prospects for rehabilitation did not substantially outweigh the reasons for waiver, then defendant's conviction in the adult court shall stand.

### III

In sum, more is required to justify a new hearing on the waiver of a juvenile to adult court than a prima facie showing that the juvenile's counsel failed to present evidence of a potential for rehabilitation. Before the appellate court orders a remand, the

juvenile must also demonstrate to the appellate court that there was evidence of a genuine potential for rehabilitation that counsel did not present to the juvenile court. If those conditions are met, the juvenile court should then consider on remand whether that potential for rehabilitation was not presented to the waiver court due to the ineffectiveness of counsel and whether a showing of that potential by effective counsel could have made a difference in the waiver proceedings. Only if the answer to both questions is yes, should there be a new waiver proceeding.

As modified, the judgment of the Appellate Division is affirmed.

*For affirmance and modification*—Chief Justice WILENTZ, and Justices POLLOCK, O'HERN, GARIBALDI, STEIN and COLEMAN—6.

*Opposed*—None.

Justice HANDLER, did not participate.