NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R.1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-1831-15T1

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

DARWIN RODRIGUEZ-FERREIRA,

 Defendant-Appellant.
__________________________

 Argued June 6, 2017 — Decided July 20, 2017

 Before Judges Koblitz and Sumners.

 On appeal from the Superior Court of
 New Jersey, Law Division, Hudson County
 Indictment No. 10-10-1807.

 Charles Alvarez argued the cause for appellant
 (Peter R. Willis, L.L.P., attorneys; Peter R.
 Willis, on the brief).

 Stephanie Davis Elson, Hudson County Assistant
 Prosecutor, argued the cause for respondent
 (Esther Suarez, Hudson County Prosecutor,
 attorney; Ms. Elson, of counsel and on the
 brief).

PER CURIAM

 Defendant Darwin Rodriguez-Ferreira appeals from an October
26, 2015 order denying post-conviction relief (PCR) without an

evidentiary hearing. He argues trial counsel was ineffective in

not requesting a hearing to challenge the scientific reliability

of certain DNA evidence presented by the forensic unit of New York

City's Office of the Chief Medical Examiner (NYOCME). We agree

that the evidence was sufficiently novel to raise the question of

why defense counsel did not request a pre-trial N.J.R.E. 104 Frye1

hearing and reverse and remand for an evidentiary hearing.

 The trial revealed the following facts. On August 16, 2008,

at approximately 5:00 a.m., Mark Kendall left his home in Jersey

City to buy cigarettes. About thirty minutes later, Kendall's

neighbor was awoken by people arguing loudly and heard someone

say, "What you doing?" A few minutes after the commotion ended,

she peered out the window of her second-floor apartment onto the

street and saw one person lying motionless on the ground and the

shadow of a second person quickly walking across the street into

Pershing Field Park.

 Kendall died in the street from multiple stab wounds. The

police investigation discovered a pair of "Nike" sandals, one in

front of Kendall's residence and another in Pershing Field.

Kendall's cell-phone was found on his person.

 The police found an exchange of calls between Kendall and an

1
 Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923).
 2 A-1831-15T1
individual named "Darwin" that occurred within forty minutes of

the time Kendall was discovered wounded on the ground. Two numbers

for a "Darwin" were stored on Kendall's cell-phone contact list.

"Darwin's" number was registered to defendant's mother, with whom

defendant lived in Jersey City, a few blocks from the murder scene.

Two blocks from the scene, a bloody twelve-inch knife wrapped in

boxer shorts was found. About eight hours after Kendall was

attacked, the police discovered bloodstains on the floor of

defendant's home. The day after Kendall was killed, defendant

flew out of the country on a one-way ticket.

 DNA testing of the blood on the knife, the right foot Nike

sandal, and the blood stain swabs taken from defendant's mother's

home matched Kendall's DNA profile. One of the tested bloodstain

samples from defendant's home had a mixture of DNA. "Kendall

[was] identified as the source of the major DNA profile obtained."

The minor DNA in this bloodstain sample was not attributable to

defendant.

 With respect to the DNA results of the boxer shorts wrapped

around the knife, a NYOCME criminalist testified that she conducted

a "Low Copy Number" DNA test, which is conducted when the DNA

sample has a lower starting amount of DNA and "typically that's

going to be on a touched object." The criminalist explained that

she "scraped the inside waistband . . . looking for skin cells[,]"

 3 A-1831-15T1
to determine its "wearer." Upon testing the skin cells, she was

able to develop a DNA profile, and concluded that defendant's DNA

profile matched as "the major contributor . . . to the sample

taken from the scrapings of the boxer shorts." Also, she tested

a blood sample from the boxer shorts, and testified it "was a

mixture of DNA from [Kendall and defendant]." She opined that

"[s]ince [she] was able to determine that there was DNA present

on the inner scrapings of the boxer shorts . . . it's possible

that [defendant] wore those boxer shorts[,]" or "[defendant] could

have just touched them or come in contact with them."

 On June 3, 2011, the jury returned a verdict convicting

defendant of knowing and purposeful murder, N.J.S.A. 2C:11-3(a)(1)

and (2), fourth-degree unlawful possession of a weapon, N.J.S.A.

2C:39-5(d), and third-degree possession of a weapon for an unlawful

purpose, N.J.S.A. 2C:39-4(d). Defendant was sentenced to a thirty-

year term with a thirty-year parole disqualifier on the murder

conviction, and to a consecutive eighteen-month term on the

unlawful possession of a weapon conviction. The count for

possession of a weapon for an unlawful purpose was merged into the

count for murder.

 We affirmed defendant's direct appeal, and remanded to the

trial court to articulate its reasons for imposing the consecutive

sentence. State v. Rodriguez-Ferreira, A-0855-11 (App. Div. May

 4 A-1831-15T1
7), (slip op. at 7-8), certif. denied, 220 N.J. 43 (2014).

 Defendant contended in his PCR petition that trial counsel

was ineffective because of counsel's failure to request a Frye

hearing challenging the testimony of the NYOCME criminalist

regarding the Low Copy Number DNA test results linking the boxer

shorts that wrapped the murder weapon to defendant.

 The PCR court, which had also conducted the trial, denied

defendant's PCR petition, finding defendant was not entitled to

an evidentiary hearing because he failed to establish a prima

facie case of ineffective assistance of counsel under the test set

forth in Strickland v. Washington, 466 U.S. 668, 694, 104 S. Ct.

2052, 2068, 80 L. Ed. 2d 674, 698 (1984).

 The court noted: "Even if trial counsel was deficient with

respect to his failure to request a Frye hearing . . . . [defendant]

has failed under prong two of Strickland, which requires a showing

that 'the deficient performance prejudiced the defense.'" The

court stated: "[Defendant] would have needed to show that had

trial counsel requested a Frye hearing, the Low Copy Number DNA

testing evidence would have been inadmissible, thereby leading to

[defendant's] acquittal."

 On appeal defendant raised the following points:

 POINT I: THE PCR COURT SHOULD HAVE GRANTED
 THE DEFENDANT A FRYE HEARING BECAUSE TRIAL
 COUNSEL'S FAILURE TO CHALLENGE THE
 ADMISSIBILITY OF THE DNA TEST RESULTS OBTAINED

 5 A-1831-15T1
 WITH A METHOD ONLY PERFORMED IN NEW YORK
 CONSTITUTED INEFFECTIVE ASSISTANCE OF
 COUNSEL. AT MINIMUM, DEFENDANT'S CLAIM OF
 INEFFECTIVE ASSISTANCE OF COUNSEL SHOULD NOT
 HAVE BEEN DISMISSED WITHOUT AN EVIDENTIARY
 HEARING.

 a. High Sensitivity Analysis, also known as Low Copy
 Number Testing
 b. Trial Counsel's performance fell below an objective
 standard of reasonableness
 c. Standard DNA Analysis
 d. Standard DNA Testing
 e. Science behind Low Copy Number testing
 f. Requirements for the Admission of Expert Testimony
 g. Low copy number testing does not have general
 acceptance in the pertinent scientific community
 h. This Court has Ordered Similar Hearings When
 Considering the Admissibility of Scientific Evidence
 in Criminal Cases

 To prevail on PCR, a defendant must "identify specific acts

or omissions that are outside the 'wide range of reasonable

professional assistance' and . . . show prejudice by demonstrating

'a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different.'"

State v. Jack, 144 N.J. 240, 249 (1996) (quoting Strickland, supra,

466 U.S. at 689, 694, 104 S. Ct. at 2065, 2068, 80 L. Ed. 2d at

694, 698). An evidentiary hearing is needed where the defendant

comes forward with facts that would, if believed, make a prima

facie showing of both deficient performance and resulting

prejudice. State v. Preciose, 129 N.J. 451, 462-63 (1992).

 "[I]n order to establish a prima facie claim, a petitioner

must do more than make bald assertions that he was denied the

 6 A-1831-15T1
effective assistance of counsel. He must allege facts sufficient

to demonstrate counsel's alleged substandard performance." State

v. Cummings, 321 N.J. Super. 154, 170 (App. Div.), certif. denied,

162 N.J. 199 (1999).

 "As a general principle, 'counsel has a duty to make

reasonable investigations or to make a reasonable decision that

makes particular investigations unnecessary.'" State v. Difrisco,

174 N.J. 195, 223 (2002) (quoting State v. Martini, 160 N.J. 248,

266 (1999)). When claiming defense counsel inadequately

investigated, the defendant "must assert the facts that an

investigation would have revealed, supported by affidavits or

certifications based upon the personal knowledge of the affiant

or the person making the certification." Cummings, supra, 321

N.J. Super. at 170 (citing R. 1:6-6).

 The mere raising of a claim for PCR does not entitle a

defendant to an evidentiary hearing. Ibid. "A petitioner must

establish the right to such relief by a preponderance of the

credible evidence." Preciose, supra, 129 N.J. at 459.

 When determining whether to grant an evidentiary hearing, the

PCR court must consider the facts in the light most favorable to

the defendant. Id. at 462-63. A hearing should be conducted if

there are disputed material facts. State v. Porter, 216 N.J. 343,

354 (2013) (quoting Rule 3:22-10(b)).

 7 A-1831-15T1
 Defendant relied on a comprehensive New York trial court

decision, New York v. Collins, 15 N.Y.S. 3d 564, 570-76, 587 (N.Y.

Sup. Ct. 2015), rendered a few months before this PCR decision,

where the New York court found Low Copy Number DNA testing

inadmissible after a lengthy Frye hearing. Defendant also pointed

to scholarly articles published in the scientific community

raising concerns about Low Copy Number DNA testing. Other New

York courts, before the 2015 Collins decision, have admitted Low

Copy Number DNA. See New York v. Megnath, 898 N.Y.S. 2d 408, 415

(N.Y. Sup. Ct. 2010) (admitting the evidence after a Frye hearing);

see also New York v. Garcia, 963 N.Y.S. 2d 517, 523 (N.Y. Sup. Ct.

2013) (admitting the evidence without a Frye hearing).

 No reported New Jersey case has found Low Copy Number DNA

results admissible in court. At the PCR hearing on remand, defense

counsel should explain what efforts were made to investigate this

form of DNA testing and why no Frye hearing was requested. If

this explanation is unsatisfactory, the court should then hold a

Frye hearing to determine whether the evidence is admissible given

today's scientific knowledge. The Low Copy DNA results were

damning evidence linking defendant to the bloody knife found two

blocks from the scene of the murder. If the evidence is not deemed

admissible, defendant is entitled to a new trial.

 8 A-1831-15T1
 Reversed and remanded for a plenary PCR hearing. We do not

retain jurisdiction.

 9 A-1831-15T1