**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4223-16T1

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

MARVIN BROOKS, a/k/a SERB,

    Defendant-Appellant.

_____

Submitted May 14, 2018 – Decided August 1, 2018

Before Judges Ostrer and Whipple.

On appeal from Superior Court of New Jersey,
Law Division, Hudson County, Indictment No.
13-03-0706.

Joseph E. Krakora, Public Defender, attorney
for appellant (Kevin G. Byrnes, Designated
Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor,
attorney for respondent (Svjetlana Tesic,
Assistant Prosecutor, on the brief).

PER CURIAM

    Defendant Marvin Brooks appeals the trial court's March 16,
2017 denial of his petition for post-conviction relief (PCR) after
an evidentiary hearing. We affirm.

On October 27, 2012, defendant entered the apartment of his former girlfriend (the victim). Defendant and the victim once lived together, but defendant moved out after the couple had broken up. The victim reported to the police that defendant called her that morning and said he was coming over. While she was talking on the phone with a friend, the victim saw defendant on the fire escape, but he went away when he noticed her. Later, he was banging on and kicking her apartment door and told her to let him inside. She said she was not going to open the door and told him to go away. Minutes later, he went onto the fire escape and punched a window. He took a brick out of his pocket, broke the window with it, and came into the apartment. Defendant hit the victim with his hands and fists. They were fighting on the floor, and defendant then stopped, stood up, and left. The police came thereafter.

Defendant was charged with second-degree burglary, third-degree eluding, and resisting arrest.[1]

At trial, the victim presented a different account, telling the jury she had posted embarrassing naked photographs of defendant on an internet website the day before the incident because she was mad at him for being romantically involved with another woman. He

_____

[1] The resisting arrest and eluding charges were dismissed.

had called her that morning and said he was coming over after she refused to take the photographs down. When defendant arrived, he knocked on her door and asked to enter. The victim initially refused him entry, and he walked around to the back of the building to the fire escape. He cracked a window with his hand and then broke it with a brick. The victim testified she agreed to let defendant into the apartment through the front door. Once inside, they argued, and defendant assaulted her. She explained her inconsistencies, stating she told the police defendant entered the apartment without her consent because "she wanted [defendant] to be locked up" and she "was mad because he put his hand on [her]".

Defendant conceded he entered the apartment and committed assault but disputed he entered the apartment without consent, the element that elevated the charge to second-degree burglary. He argued the outcome hinged on which of the victim's stories were credible.

Defendant was convicted of second-degree burglary and sentenced to eight years in prison with an eighty-five percent term of parole ineligibility. On direct appeal, we affirmed the conviction, but remanded to correct an erroneous judgment of conviction.

On January 19, 2016, defendant filed a petition for PCR, asserting ineffective assistance of counsel because his counsel

did not contact an eyewitness, Hassan Bethea, to testify at trial. On March 16, 2016, the judge held an evidentiary hearing.

Bethea testified he lived diagonally across the hall from the victim, and he clearly observed defendant and the victim in front of the victim's apartment door. Bethea stated the victim appeared to be laughing and defendant was a "little upset." He testified the victim voluntarily allowed defendant into her apartment, but he did not observe anything after the door was closed. Bethea was not contacted about this incident until after defendant was convicted.

Defendant testified Bethea observed the incident unfold, and he told his trial counsel about Bethea during jury selection. Under questioning by the court, defendant stated he raised Bethea as a potential witness to his trial counsel when he realized the "realness of the situation."

Defendant's trial counsel then testified. She stated she represented defendant in three separate matters and remembered the details of this case. In preparation for trial, she went to the scene of the crime, spoke with defendant and the victim, reviewed the police reports, and sent an investigator to talk to the victim's neighbors, specifically those who called 9-1-1. The investigator was unable to gain entry into the apartment complex because it had a locked entrance, and therefore, the investigator

did not interview anyone. Counsel testified defendant did not identify any potential witnesses, except the victim, in preparation for trial.

The court denied defendant's PCR petition, finding counsel attempted to investigate, and defendant did not provide her with a potential witness until jury selection. The court further noted it was unclear what defendant told counsel at jury selection. The judge found "defendant failed to provide the name or information regarding [Bethea]. It was not that the attorney failed to explore all avenues." The court reasoned Bethea was not presented "as a viable, identifiable and firm witness that would have been available to testify for him on his behalf." The court noted if defendant had presented Bethea as a viable witness, counsel would have testified to that effect at the PCR hearing, and the trial record would have contained evidence of defendant's desire to have Bethea testify. The judge found if Bethea had testified, the outcome of the trial may have been altered because Bethea would have corroborated the victim's trial testimony that she voluntarily allowed defendant into the apartment.

This appeal followed, and on appeal, defendant argues:

> TRIAL COUNSEL FAILED TO CONDUCT AN INVESTIGATION THAT OBJECTIVELY REASONABLE COUNSEL WOULD HAVE CONDUCTED, RESULTING IN SUBSTANTIAL UNFAIR PREJUDICE TO THE DEFENDANT'S CASE.

To prevail on a claim of ineffective assistance of counsel, defendant must satisfy the two-prong Strickland[2] test: (1) counsel's performance was deficient, and she made errors that were so egregious counsel was not functioning effectively as guaranteed by the Sixth Amendment to the United States Constitution; and (2) "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687; State v. Fritz, 105 N.J. 42, 52 (1987).

Under the first prong, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. The court must determine whether the acts or omissions of counsel "were outside the wide range of professionally competent assistance." Ibid. Adequate assistance of counsel must be measured by a standard of "reasonable competence." State v. Jack, 144 N.J. 240, 248 (1996) (citing Fritz, 105 N.J. at 53).

Under the second prong of Strickland, defendant must prove prejudice. Fritz, 105 N.J. at 52. He must show a "reasonable probability" that counsel's deficient performance affected the outcome of the proceeding. Strickland, 466 U.S. at 694. A

---

[2] Strickland v. Washington, 466 U.S. 668 (1984).

reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Ibid.

We review a PCR petition with deference to the trial court's factual findings. State v. Nash, 212 N.J. 518, 540 (2013) (citations omitted). We "give deference to those findings of the trial judge which are substantially influenced by his opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). "An appellate court's reading of a cold record is a pale substitute for a trial judge's assessment of the credibility of a witness he has observed firsthand." Nash, 212 N.J. at 540 (citation omitted). Nevertheless, all legal conclusions are reviewed de novo. State v. Harris, 181 N.J. 391, 415 (2004) (citing Toll Bros. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)).

Defendant argues his trial counsel was ineffective for failing to properly investigate and produce Bethea as a witness at trial. According to defendant, the central issue was whether the victim allowed defendant to enter her apartment and his counsel was objectively ineffective for only interviewing the victim and himself. Defendant also asserts the PCR court erroneously imposed

an obligation on him to provide his trial counsel with all information surrounding the crime. We disagree.

As to the first prong of <u>Strickland</u>, the PCR judge determined defendant's trial counsel rendered effective assistance. The judge found her a credible witness and noted she sent an investigator to the scene of the crime to try to interview neighbors. The judge found defendant did not tell counsel about Bethea as a potential witness until jury selection, and it was uncertain exactly what defendant told counsel about Bethea. The judge reasoned if defendant had told counsel that Bethea was a necessary witness, counsel would have testified to this effect at the PCR hearing or the record from the trial would have indicated either an attempt to bring Bethea in as a witness or defendant's complaints about Bethea not being called as a witness. Without such evidence, the judge thought it likely defendant may have mentioned Bethea in passing as a potential witness and only truly sought Bethea as a witness after trial when he fully realized the gravity of the situation.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." <u>Strickland</u>, 446 U.S. at 689. Here,

even if counsel only learned of the existence of Bethea during jury selection, it is unclear how defendant presented him as a potential witness. Counsel attempted to investigate and interviewed the two known main witnesses — defendant and the victim. Despite defendant's contention that it was counsel's obligation to uncover Bethea as a potential witness, when evaluating her performance from her perspective, she rendered effective assistance of counsel because she investigated all known leads at the time. Only with the benefit of hindsight does defendant now contend her performance was ineffective.

Regarding prong two, the PCR judge found the outcome of the trial may have been altered if Bethea was secured as a witness by counsel. However, because we agree with the PCR judge that counsel provided effective assistance, we need not consider the second prong of Strickland. See Nash, 212 N.J. at 542 (noting a defendant must establish both Strickland prongs) (citations omitted).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4223-16T1