**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0233-18T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

ANDREW A. KRAMER, a/k/a
ANDREW D. KRAMER, and
ANDREW KRAEMER,

     Defendant-Appellant.

_____

Submitted November 7, 2019 – Decided December 16, 2019

Before Judges Whipple and Gooden Brown.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Indictment No. 14-02-0158.

Joseph E. Krakora, Public Defender, attorney for appellant (Angela Maione Costigan, Designated Counsel, on the brief).

Charles A. Fiore, Gloucester County Prosecutor, attorney for respondent (Dana R. Anton, Senior Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Andrew Kramer appeals from the July 30, 2018 Law Division order denying his petition for post-conviction relief (PCR) without an evidentiary hearing. We affirm.

We glean these facts from the record. On February 26, 2014, defendant was charged in a seven-count indictment with first-degree robbery, N.J.S.A. 2C:15-1(a); fourth-degree aggravated assault, N.J.S.A. 2C:12-1(b)(4); third-degree criminal restraint, N.J.S.A. 2C:13-2(a); second-degree possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree unlawful possession of a firearm, N.J.S.A. 2C:39-5(b); third-degree theft, N.J.S.A. 2C:20-3(a); and third-degree terroristic threats, N.J.S.A. 2C:12-3(b). The charges stemmed from a woman, whose granddaughter defendant had dated, accusing defendant of tying her up in her home with rope, muzzling her with a bandana, stealing her bank cards and car at gunpoint, and fleeing the scene in the car. When he was apprehended, defendant admitted to the theft, but denied the robbery or the use of a weapon, and attributed his actions to his drug addiction. No gun was recovered, but the bandana used to gag the victim had defendant's DNA.

On January 30, 2015, defendant entered a negotiated guilty plea to the armed robbery charge and was sentenced to ten years' imprisonment, subject to an eighty-five percent period of parole ineligibility pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. In accordance with the terms of the plea agreement, the remaining counts of the indictment were dismissed, and defendant was sentenced to concurrent terms of imprisonment on two unrelated indictments and an accusation. Defendant did not file a direct appeal.[1] However, his subsequent motion to reduce his sentence based on his history of addiction at the time of the crime and his rehabilitation while incarcerated was denied.

Defendant filed a timely PCR petition. In his supporting certification, defendant asserted "[he] would have proceeded to trial rather than enter a guilty plea" "[i]f not for the ineffectiveness of [his] trial counsel[.]" Defendant certified that despite "inform[ing] [his] attorney that [he] did not wish to plead to the robbery or weapons offenses [he] did not commit," his attorney "just continually told [him] to plead [guilty.]" According to defendant, "[he] was incarcerated for [585] days pending [trial,]" during which time his attorney "did not come to see [him] in the jail," and "refused to discuss trial strategy with

---

[1] Under the plea agreement, defendant agreed to waive his right to appeal.

A-0233-18T4

[him]." Additionally, defendant asserted he was undergoing "withdraw[a]l" and "suffer[ing] with depression" at the time. Defendant averred "[he] felt that [he] had no choice but to plead guilty" because "[he] was afraid to insult [his] attorney on the record for fear that it would hurt [his] case, or further damage his representation of [him]." According to defendant, "[he] did not trust [his] attorney] to represent [him] at trial[,]" and although he "asked for a new attorney" and "advised the probation officer who interviewed [him] for [his] pre-sentence report[,] . . . no one addressed [his] issues."

In his counseled brief, defendant argued his attorney was ineffective in the pre-trial, plea, and sentencing phases of the proceedings by: 1) "failing to prepare for the trial" and address the weaknesses in the State's case, including the fact that a gun was never recovered and the victim was biased against him because of the dating relationship with her granddaughter; 2) "failing to meet with [defendant]" while he was incarcerated in order to "discuss trial strategy," defenses, and mitigating factors, including defendant's drug addiction, mental health issues, and learning disabilities; and 3) failing to file a motion to withdraw his guilty plea under Slater[2] and to withdraw as his attorney after

---

[2] State v. Slater, 198 N.J. 145 (2009).

defendant indicated to the probation officer during his pre-sentence interview that he was misled and misrepresented and wanted a different attorney.

Following oral argument, Judge Kevin T. Smith denied defendant's petition. In a July 24, 2018 twenty-five page written opinion, the judge reviewed the factual background, applied the applicable legal principles, and concluded defendant failed to "establish[] a prima facie case that he was denied effective assistance of counsel[,]" and failed to satisfy either prong of the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984), and adopted by our Supreme Court in State v. Fritz, 105 N.J. 42, 49-53 (1987). Additionally, in rejecting defendant's request for an evidentiary hearing, the judge concluded "[defendant] ha[d] not raised any arguments, provided any evidence, or claimed evidence would come out during an evidentiary hearing which would rebut the record."

As to the first Strickland prong, the judge found defendant made "unsupported assertions" and assertions "which the record clearly contradict[ed]." Specifically, the judge determined "[t]he record contradict[ed] [defendant's] claim that trial counsel failed to meet with him, failed to discuss strategy, and was not prepared to proceed to trial." Relying on defendant's plea colloquy at the January 30, 2015 plea hearing, Judge Smith found defendant

"affirmed under oath that trial counsel reviewed the plea agreement with him in such detail that [defendant] understood."

Further, the judge explained:

> [Defendant] stated that he had sufficient time to meet with trial counsel and discuss the case, ask questions, discuss the charges, discuss the discovery, and analyze the strengths and weaknesses of the case. Most significantly, [defendant] confirmed he was satisfied with trial counsel's services. In addition to confirming this under oath, [defendant] also signed or initialed every page of his plea agreement,[3] including page five, question twenty-four, which asks "are you satisfied with the advice you received from your lawyer?" The answer circled is "yes." In court, [defendant] was given the opportunity to raise any of the issues he now complains of. He also was free to not sign the plea deal. Instead, he confirmed under oath that counsel did the exact things [defendant] now claims did not happen.

In addressing defendant's specific contention that trial counsel did not visit him in jail, Judge Smith acknowledged "the practical reality . . . that most attorney-client meetings involving [public defender attorneys as here] occur[red] in the courthouse." The judge also acknowledged trial counsel's "obligation to discuss evidence, exposure, and strategy" with his client. The

---

[3] During the plea colloquy, although defendant indicated "[he] had learning disabilities growing up[,]" he acknowledged that he graduated from high school, and that his reading ability was sufficient that he understood the documents that he read.

A-0233-18T4

judge explained that, "[w]hile ideally, trial counsel could have visited [defendant] in jail to discuss the case," defendant "[did] not claim trial counsel failed to meet with him at all."  On the contrary, "by [defendant's] own sworn testimony such discussions did occur."  The judge therefore concluded that "[t]rial counsel's failure to visit [defendant in] . . . jail [did] not amount to deficient performance."

The judge also rejected defendant's contention that trial counsel "was not prepared to proceed to trial."  The judge explained that "trial counsel's filling out both the pre-trial memorandum and plea agreement form at the pre-trial conference" was "indicative of his preparedness, not lack thereof."  According to the judge, "[b]y filling out both documents, trial counsel gave [defendant] the opportunity to proceed with either option."  Additionally, the judge noted that trial counsel also "demonstrated his preparedness during [the] plea colloquy" when "[defendant] expressed hesitancy when asked to establish a factual basis for the armed robbery[.]"  The judge pointed out that when "[defendant] continued to deny having [a] gun" for purposes of the factual basis, trial counsel advised that he had filled out the pre-trial memorandum, . . . a necessary step to placing the case on the trial list."  According to the judge, "[b]y saying this, trial

7

counsel indicated to the court that he was ready to proceed to trial if they could not establish a factual basis for the plea."[4]

Turning to the second <u>Strickland</u> prong, the judge determined defendant "failed to make a prima facie case that but for counsel's errors[,] he would not have pled guilty, and that the decision to reject the plea bargain would have been rational under the circumstances." First, the judge found that "[defendant's] conduct contradict[ed] his claim that he would have gone to trial." According to the judge,

> [w]hile [defendant] did express hesitancy about admitting to having a gun during his plea colloquy, . . . this was not due to a genuine claim of innocence or a wavering desire to follow through with the plea. Instead, this was due to a misunderstanding of whether the weapons charges would be dismissed if [defendant] admitted to having a gun. . . . During the lengthy discussion with the court, [defendant] never indicated that his hesitancy was in any way due to a desire to proceed to trial or frustration with trial counsel's services. Only now, after the fact, does [defendant] claim he would have gone to trial.

---

[4] The judge noted that, ultimately, after conferring with trial counsel, defendant was able to establish a factual basis, and acknowledged that his prior denial "was all due to a misunderstanding on his part" that "if he admitted to having the gun, the State would have grounds to re-charge him with weapons offenses."

A-0233-18T4

Next, the judge found defendant "has not proved his decision to reject the plea would have been rational under the circumstances." Recounting defendant's potential penal exposure, the judge explained:

> [Defendant] was facing a seven[-]count indictment including a first degree armed robbery charge. On that alone, [defendant] was facing a potential exposure of [twenty] years imprisonment had he gone to trial. . . . Additionally, [defendant] was charged with two second[-]degree [weapons] charges . . . which each exposed [him] to ten years imprisonment and were subject to the Graves Act. . . . On top of that, [defendant] had sentencing pending on three other indictments.[5] Despite the lengthy exposure [defendant] was facing, mandatory parole ineligibility, and the real potential for consecutive sentences given the other pending indictments, trial counsel managed to negotiate a very favorable plea for [defendant]. Defendant's plea agreement had six of the seven counts dismissed, gave [defendant] the minimum statutory term allowable for a first[-]degree offense, which was eight years less that the State's initial offer, and had this term run concurrent with the three other indictments.

In evaluating "the evidence in [the] case[,]" the judge acknowledged that the State's case was "certainly weakened" by the fact that "the firearm [defendant] allegedly used was never recovered and his DNA was not found on the rope allegedly used to bind [the victim]." However, the judge pointed out that "had [defendant] gone to trial[,] [he] would have conceded guilt on some of

---

[5] The judge was referring to the two unrelated indictments and one accusation.

the charges[,]" by virtue of his admission that "he went to [the victim's] residence, stole her purse, took her vehicle . . . and used her ATM cards to purchase drugs." Further, there was physical evidence based on "a DNA [l]aboratory [r]eport" identifying defendant's "DNA as the DNA found on the bandana used to restrain [the victim,]" which "evidence contradicted [defendant's] claim of partial innocence" and corroborated the victim's account. The judge concluded that

> considering [defendant's] potential exposure, the potential for consecutive sentences on his other wholly unrelated indictments, his proposed defense at trial, the victim's identification of [defendant], and [defendant's] DNA being found on the bandana, it would not have been rational for [defendant] to reject the generous plea agreement trial counsel successfully negotiated on his behalf.

Judge Smith also rejected defendant's claim that based on defendant's "criticism" of him during his pre-sentence interview, "trial counsel was operating under a conflict of interest" and was "ineffective" by failing to "fil[e] a Slater motion to withdraw [defendant's] plea and withdraw[] as counsel." The judge explained:

> [T]he court and trial counsel's conduct during sentencing are indicative that no conflict of interest existed. At sentencing, the trial court noted the statement [defendant] made in the pre-sentence report. In response, the court reminded [defendant] all that trial

10

counsel had done for him and how trial counsel negotiated him a generous plea. . . . That the trial court did not inquire into [defendant's] complaint further, and instead reiterated the job trial counsel did, suggests the court did not find any issue with trial counsel's representation. Also, despite [defendant's] comments in the pre-sentence report[,] trial counsel continued to advocate on [defendant's] behalf, such as contesting the amount of restitution owed and advocating for placement in a prison close to [defendant's] family.

Additionally, the judge determined "even had trial counsel filed a <u>Slater</u> motion, the result would not have been different" because the <u>Slater</u> "factors weigh[ed] against allowing [defendant] to withdraw his plea."[6]

On appeal, defendant raises the following points for our consideration:

I: THE LOWER COURT ERRED IN FAILING TO FIND THAT DEFENSE COUNSEL WAS INEFFECTIVE.

A. DEFICIENCY PRONG

1. IN THE PLEA PHASE, DEFENSE COUNSEL FAILED TO CONSIDER THAT NO GUN WAS EVER FOUND AND THAT THERE WERE SIGNIFICANT DISCREPANCIES IN THE WITNESS STATEMENT.

---

[6] <u>See</u> <u>Slater</u>, 198 N.J. at 157-58 (establishing four factors trial judges must "consider and balance . . . in evaluating motions to withdraw a guilty plea[,]" namely "(1) whether the defendant has asserted a colorable claim of innocence; (2) the nature and strength of defendant's reasons for withdrawal; (3) the existence of a plea bargain; and (4) whether withdrawal would result in unfair prejudice to the State or unfair advantage to the accused.").

2. DEFENSE COUNSEL FAILED TO DISCUSS AND MEET HIS CLIENT PRIOR TO HIS PLEA.

3. DEFENSE COUNSEL FAILED TO APPRISE THE COURT AT THE PRE-TRIAL/PLEA AND THE SENTENCING PHASE THAT DEFENDANT WAS NOT COMPETENT TO ENTER INTO A PLEA AGREEMENT.

4. DEFENSE COUNSEL WAS NOT PREPARED FOR TRIAL.

5. DEFENSE COUNSEL FAILED TO FILE A MOTION TO WITHDRAW DEFENDANT'S GUILTY PLEA.

6. DEFENSE COUNSEL FAILED TO WITHDRAW.

B. PREJUDICE PRONG.

II. THE LOWER COURT ERRED IN FAILING TO HOLD AN EVIDENTIARY HEARING.

Merely raising a claim for PCR does not entitle a defendant to an evidentiary hearing. See State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings only if the defendant has presented a prima facie claim of ineffective assistance of counsel (IAC), material issues of disputed fact lie outside the record, and resolution of those issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343,

355 (2013). A PCR court deciding whether to grant an evidentiary hearing "should view the facts in the light most favorable to a defendant." State v. Preciose, 129 N.J. 451, 463 (1992). However, "[a] court shall not grant an evidentiary hearing" if "the defendant's allegations are too vague, conclusory or speculative[.]" R. 3:22-10(e)(2).

In turn, we review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing. State v. Marshall, 148 N.J. 89, 157 (1997). We also typically review a PCR petition with "deference to the trial court's factual findings . . . 'when supported by adequate, substantial and credible evidence.'" State v. Harris, 181 N.J. 391, 415 (2004) (quoting Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002)). However, where, as here, "no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge].'" State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (quoting Harris, 181 N.J. at 421). We also review de novo the legal conclusions of the PCR judge. Harris, 181 N.J. at 415-16 (citing Toll Bros., 173 N.J. at 549).

To establish a prima facie claim of IAC, defendant must satisfy the two-prong Strickland test: he must show that (1) "counsel's performance was deficient" and he "made errors so serious that counsel was not functioning as the

13

'counsel' guaranteed . . . by the Sixth Amendment" to the United States Constitution; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 687, 694; see also Fritz, 105 N.J. at 52. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." Id. at 694.

Under the first Strickland prong, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690. Adequate assistance of counsel must be measured by a standard of "reasonable competence." State v. Jack, 144 N.J. 240, 248 (1996) (quoting Fritz, 105 N.J. at 53). "'Reasonable competence' does not require the best of attorneys[.]" State v. Davis, 116 N.J. 341, 351 (1989). Under the second Strickland prong, defendant must prove prejudice. Fritz, 105 N.J. at 52. In order to establish the Strickland prejudice prong to set aside a guilty plea, "'a [defendant] must convince the court that a decision to reject the plea bargain'" and "insist on going to trial" would have been "rational under the circumstances." State v. Maldon, 422 N.J. Super. 475, 486 (App. Div. 2011) (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)). That determination should be "based on evidence, not

speculation." Ibid. Because there is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment[,]" Strickland, 466 U.S. at 690, a defendant "bears the burden of proving" both prongs of an IAC claim "by a preponderance of the evidence." State v. Gaitan, 209 N.J. 339, 350 (2012).

Applying these standards, we affirm substantially for the reasons expressed in Judge Smith's thoughtful and thorough written opinion. We have considered all of defendant's contrary arguments in light of the record and applicable legal principles, and conclude they are without sufficient merit to warrant further discussion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0233-18T4