815 A.2d 513 (2003)
357 N.J. Super. 380
STATE of New Jersey, Plaintiff-Respondent,
v.
James McILHENNY, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted November 6, 2002.
Decided February 7, 2003.
*514 Yvonne Smith Segars, Public Defender, attorney for appellant (Judson A. Parsons, Jr., Designated Counsel, of counsel and on the brief).
Peter C. Harvey, Acting Attorney General, attorney for respondent (Teresa A. Blair, Deputy Attorney General, of counsel and on the brief).
Before Judges STERN, COBURN and COLLESTER.
The opinion of the court was delivered by COLLESTER, J.A.D.
Defendant James McIlhenny appeals from the denial of his second petition for post-conviction relief (PCR) following his 1987 conviction for murder. We affirm.
Arthur Banner was an eighty-one year old eccentric recluse living in Ellwood, New Jersey. When his shack burned in March 1987, he moved to a nearby abandoned car. On May 25, 1987 his badly decomposed body was found next to a junked Chevrolet Vega. The cause of death was homicide due to severe blunt force facial injuries. The date of death could not be determined because of the condition of the body.
The investigation began with interviews of acquaintances of Banner, who gave varied accounts as to when he had last been seen. Some claimed to have seen him at a time which was inconsistent with the degree of decomposition of his body. As they pursued the matter further, the police interviewed defendant's girlfriend, Martha Butterhof, who told them she was with defendant on May 10, 1987, when he admitted he had assaulted and attempted to rob Banner the night before. Butterhof said that defendant described repeatedly hitting Banner in the face with his fists and leaving him "barely breathing." He added that Ray Stover came with him to rob Banner but took no part in the beating.
When Stover was interviewed, he admitted he and the defendant went to rob Banner in the early morning hours of May 10, 1987, after a night of drinking. It was rumored that the elderly man kept hidden about $2,000. Stover said that when they found Banner, defendant demanded the money. Banner refused. Defendant struck Banner with his fist and continued punching and kicking him until he was unconscious. Stover and defendant first searched the car where Banner lived and turned the old man's body over to search his pockets. They found no money and left Banner bleeding and unconscious next to a junked Vega. Stover saw that defendant's work boots were "filled with blood."
Defendant was then taken into custody. He was twenty-five years old, 6'5" and weighed 280 pounds. He told police that he demanded money from Banner, beat him into unconsciousness and left him lying next to the Vega.
On December 16, 1987, defendant waived his right of indictment and pleaded guilty to an accusation charging felony murder, N.J.S.A. 2C:11-3a(3), in exchange for the prosecutor's sentence recommendation of life imprisonment with thirty years parole ineligibility. During the plea hearing, the defendant gave the following factual basis:
Well, I was drunk. I was told by a couple of friends that [the victim] had a large sum of money on him. So I went back there, relieved him of his money. He got loud and I hit him a few times and knocked him out and might have kicked him. I don't remember. And I searched him and his car. We searched him and his car, I should say. Found *515 nothing. When I left he was still breathing. He had a broken nose.
After the judge then asked about the extent of his intoxication, defendant consulted with his lawyer and then told the judge he understood that his intoxication at the time of the crime was insufficient to establish a defense to the charge. Thereafter, on February 11, 1988, he was sentenced pursuant to the plea agreement to a term of life imprisonment with thirty years parole ineligibility.
Defendant filed a direct appeal on November 2, 1988 in which he argued his sentence was excessive. We disagreed and affirmed. On April 21, 1989, defendant filed a motion to vacate the judgment of conviction under R. 3:20-1 based on his claim of a "possibility of a recanting witness." The motion was denied, and no appeal was taken.
On September 28, 1990, defendant filed his first PCR petition in which he sought to withdraw his guilty plea on grounds he was mentally incompetent at the time of his plea. After denial by the hearing judge, we affirmed on the procedural ground of R. 3:22-4 since defendant failed to raise the issue on his direct appeal. We further noted that trial counsel's decision to forego the argument of mental incompetency was entirely reasonable in light of the record of the plea proceeding. State v. James McIlhenny, Docket No. A-1440-90T4 (App.Div.1992), certif. denied, 133 N.J. 430, 627 A.2d 1137 (1993).
Thereafter, defendant filed a second PCR petition in which he alleged ineffective assistance of trial counsel. The petition was dismissed by the hearing judge on September 22, 1997, because it was not filed within the five year limitation period of R. 3:22-12a. Defendant appealed, and we remanded on the grounds that defendant was entitled to have his appointed counsel review his pro se petition and make additional arguments. State v. McIlhenny, 333 N.J.Super. 85, 754 A.2d 605 (App.Div.2000).
Defendant filed a subsequent pro se PCR petition on September 27, 2000, which was supplemented by a brief filed by appointed counsel. The hearing judge denied the petition on December 21, 2000, and defendant appeals, setting forth the following arguments:
DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE AT THE TIME OF HIS GUILTY PLEA HIS DEFENSE COUNSEL FAILED TO INFORM THE COURT THAT THERE APPEARED TO BE NO FACTUAL BASIS FOR THE CHARGE THAT DEFENDANT WAS THE CAUSE OF THE VICTIM'S DEATH.
A. DEFENDANT FAILED TO RECEIVE THE EFFECTIVE ASSISTANCE OF COUNSEL.
B. THERE IS NO PROCEDURAL BAR TO GRANTING RELIEF TO DEFENDANT.
We treat the present matter as a continuation of the 1997 petition, which is defendant's second PCR application. He now claims ineffective legal assistance at the time of his guilty plea because his lawyer did not advise the judge of the contents of investigative reports in which certain persons claimed to have seen Banner alive and apparently unhurt at a time after he had been beaten by defendant. Defendant does not contend this information was withheld by the State. In fact, he told the police after his arrest that he read newspaper articles after the crime quoting their witness interviews. He further acknowledged that he discussed this information with his lawyer prior to his plea. His contention is that the lawyer should have *516 given the information to the plea judge, who then could have rejected the plea.
We find no authority for defendant's arguments that the hearing judge must be advised of all possible exculpatory information before accepting a voluntary and informed plea of guilty and that counsel's failure to do so constitutes ineffective assistance. We further reject these contentions. The record reflects that defendant was made fully aware of possible defenses by his trial counsel prior to the entry of his guilty plea. Defendant faced the charge of capital murder in the face of overwhelming State proof which included his confession. His attorney was charged with the responsibility of evaluating the proofs with defendant for preparation of a defense at trial or to seek a plea agreement eliminating the realistic prospect of a capital murder conviction. We cannot and will not second guess the attorney recommending a plea agreement under these circumstances. A plea agreement provides a "mutuality of advantage" to both defendant and the State. State v. Taylor, 80 N.J. 353, 361, 403 A.2d 889 (1979). Here the advantage to defendant was obvious to avoid a capital sentence.
At the plea hearing, defense counsel advised the plea judge he had discussed the case with defendant on several occasions after review of the discovery with him. He added,
While there is some question as to the time frame that was involved in the murder, we are not able to present any defense or any explanation that would counter the logical conclusion that the blows referred to in the autopsy were those delivered by [defendant]. And that he was in fact the agent of Mr. Banner's death.
The subject of the discussions between defendant and his lawyer was also considered by us in our 1992 decision affirming the denial of defendant's first PCR petition.
The record of that plea proceeding shows that McIlhenny's lawyer had discussed "extensively" with him the discovery, particularly statements previously given by McIlhenny and his codefendant, and the autopsy report. These were consistent with the conclusion that the victim, 81 year old Arthur Banner, had been beaten to death by McIlhenny during the course of his planned robbery of $2,000 which the old recluse was reputed to carry.
We agree with the conclusion of the PCR hearing judge in the instant case that defendant's sudden shift in position after more than a decade to claim for the first time that he was not the cause of Banner's death is an untimely and incredible afterthought. Defendant has never challenged his own confession or the statements of Butterhof and Stover that he viciously beat the eighty-one year old victim into unconsciousness and left him lying in the same spot where his decomposed body was found fifteen days later. It is ludicrous to argue that the elderly victim arose from unconsciousness and traveled about for days with no noticeable injury and returned to die in the same spot. We conclude that defendant's arguments for PCR are light years short of meeting the standard for a prima facie showing of ineffective assistance of counsel. See, Strickland v. Washington, 466 U.S. 668, 687-90, 104 S.Ct. 2052, 2064-66, 80 L.Ed.2d 674, 693-95 (1984); State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). Moreover, defendant's arguments do not satisfy the requirement of a showing that there was a reasonable probability that but for the alleged errors of trial counsel, defendant would have insisted on going to trial. See, Hill v. Lockhart, 474 U.S. 52, 58-59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210 (1985).
*517 Although the hearing judge did not dismiss defendant's PCR petition as procedurally barred by R. 3:22-4 and R. 3:22-12, clearly he could have done so. Defendant failed to establish "excusable neglect" for relaxation of R. 3:22-12. He did not show any exception to the bar of R. 3:22-4 and made no adequate showing of "fundamental injustice" or denial of his constitutional rights. His petition was procedurally barred under any reasonable interpretation of the Rules of Criminal Practice. As stated by Justice Garibaldi,
The Rules are imposed for a purpose. They already contain ample exceptions allowing their relaxation to insure fairness and prevent injustice. We do not endorse their rigid, mechanical application; we state simply that the Rules and their exceptions should be conscientiously applied to the unique circumstances of each case with due respect for both the rule and the exception.
[State v. Mitchell, 126 N.J. 565, 586-89, 601 A.2d 198 (1992).]
The murder of Arthur Banner took place in May 1987. Defendant's guilty plea was accepted by the trial court on December 16, 1987. He was sentenced on February 11, 1988. With affirmance on direct appeal and denial of his earlier PCR petition, the case reached its legal and logical terminus. To consider legal arguments available to a defendant on direct appeal years after conviction and sentence does not serve justice. Rather it mocks the reasonable time limits of the Rules of Criminal Practice and insults the laudatory purpose of post-conviction relief. In the case of this guilty murderer enough is enough.
Affirmed.