**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3351-23

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

IMAM S. SEARS, a/k/a
SEARS SHARIEF, and
IMAM SEARS,

     Defendant-Appellant.

_____

Submitted October 22, 2025 – Decided November 18, 2025

Before Judges Smith and Jablonski.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 21-05-0679.

Jennifer N. Sellitti, Public Defender, attorney for appellant (Frank M. Gennaro, Designated Counsel, on the brief).

Theodore N. Stephens II, Essex County Prosecutor, attorney for respondent (Shep A. Gerszberg, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Imam S. Sears appeals the denial of his motion for post-conviction relief (PCR). Sears alleges ineffective assistance of counsel that resulted in a guilty plea for a carjacking on September 2, 2020, in East Orange, New Jersey. We affirm.

I.

On September 2, 2020, East Orange police responded to a reported carjacking on Rhode Island Avenue. The victim informed police he was pistol whipped in the left cheek with a brown handgun, and two men stole his 2006 Honda Odyssey. The victim described the first assailant as a tall African-American male with shoulder length blonde dreadlocks wearing a dark-colored hooded sweatshirt. The victim described the second assailant as a tall African-American male with long dreadlocks or braids. Dispatch simultaneously received a call from two witnesses who witnessed the carjacking and were in pursuit of the suspects driving the stolen vehicle. Witnesses observed the suspects park and ditch the car, then jump over the fence into adjacent backyards. One witness observed that one of the suspect's sweatpants had red on them.

East Orange police officers canvassed the area around the stolen car and found a large brass-colored handgun near the fence, among other items. After a

foot chase, police apprehended and arrested defendant, whom they believed to be the second suspect. Police conducted a show-up where the victim positively identified defendant as one of the assailants. Another man was arrested shortly after the incident occurred and the victim positively identified him as the other assailant. That man was later released and had all charges dismissed as surveillance video from the area showed he had been misidentified.

After investigation, police discovered the first suspect of the carjacking was defendant's nephew, Yashadeek Sears. Surveillance video also showed defendant and Yashadeek watching and following the victim and fleeing through several backyards near the area where the stolen car was parked.

An Essex County grand jury charged defendant and Yashadeek with six counts: second-degree conspiracy to commit carjacking/robbery, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:15-2(a)(1); first-degree carjacking, N.J.S.A. 2C:15-2(a)(1); first-degree robbery, N.J.S.A. 2C:15-1; second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); second-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(a); and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1). The grand jury also charged defendant with second-degree certain persons not to have weapons, N.J.S.A. 2C:39-7(b).

3

On January 24, 2022, Yashadeek entered a guilty plea to first-degree robbery. As part of that guilty plea, he agreed to testify against defendant at trial. Yashadeek testified in his plea colloquy that defendant came up with the plan to commit the carjacking and participated in the crime, laying out the events of the crime as they happened. This was contrary to Yashadeek's earlier letter to the court, dated January 23, 2021, in which he exculpated defendant.

During jury selection for defendant's trial approximately six months later, defendant informed counsel that he wished to plead guilty and no longer wished to proceed to trial. On June 30, 2022, defendant pled guilty to conspiracy to commit carjacking. Defendant was sentenced to seven years, subject to the No Early Release Act[1], and the remaining charges were dismissed. Defendant did not file a direct appeal.

On January 11, 2023, defendant filed a motion for PCR alleging ineffective assistance of counsel. Defendant argued he would not have pled guilty if: plea counsel filed a motion to suppress the identification; informed him of Yashadeek's exculpatory letter; and provided and reviewed all discovery with him. The PCR court held an evidentiary hearing with testimony from plea counsel and defendant.

---

[1] N.J.S.A. 2C:43-7.2.

Plea counsel testified that she did not recall why she decided against filing the motion to suppress. Instead, she attested to her routine practices when reviewing a case. These practices included: her trial strategy decision-making process when the evidence against her client was overwhelming; her taking down handwritten notes when reviewing defendant's case; and her identification of potential motions. Plea counsel recalled making a note to file a Wade/Henderson[2] motion to suppress the identification, writing that "show-ups are inherently prejudicial." She recalled later seeing surveillance video implicating defendant in the carjacking. Plea counsel also testified defendant informed her that Yashadeek planned to exculpate him. She recalled investigating further and speaking with Yashadeek's attorney, who informed her that Yashadeek had instead inculpated defendant in his plea colloquy.

Defendant testified that he was initially pleased with plea counsel's representation, but his perception later changed believing she had not provided him with all the discovery. He also testified he is unfamiliar with how plea escalations and negotiations work and that he lied multiple times during his guilty plea. Defendant testified he was not made aware of Yashadeek's letter

---

[2] U.S. v. Wade, 388 U.S. 218 (1972); State v. Henderson, 208 N.J. 208 (2011).

A-3351-23

until after his pre-sentencing report was completed and that would have changed his decision to plead guilty.

The PCR court found plea counsel testimony credible, noting she made decisions strategically and her representation was not ineffective. The PCR court did not find defendant credible and found defendant failed to demonstrate both elements of the Strickland[3] test. Consequently, the court denied defendant's PCR motion. This appeal followed.

On appeal, defendant argues the PCR court erred in: (1) finding plea counsel's representation was not ineffective when she elected not to file a motion to suppress; (2) finding plea counsel's representation was not ineffective when she failed to inform defendant of Yashadeek's exculpatory letter; and (3) failing to address defendant's argument that plea counsel did not provide and review all discovery with him.

II.

We review the PCR court's legal findings de novo. State v. Hernandez-Peralta, 261 N.J. 231, 246 (2025) (citing State v. Harris, 181 N.J. 391, 419 (2004)). "Our review of a PCR court's factual findings is 'necessarily deferential.'" Ibid. (citing State v. Nash, 212 N.J. 518, 540 (2013)). The PCR

---

[3] Strickland v. Washington, 466 U.S. 668, 697-88, 694 (1984).

court's factual findings based on its review of live witness testimony at an evidentiary hearing will be upheld when supported by sufficient credible evidence in the record. Nash, 212 N.J. at 540.

III.

Defendant raises several claims of ineffective assistance by plea counsel. We address each in turn.

When addressing ineffective assistance of counsel (IAC) claims, we follow the two-prong standard formulated by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668, 697-88, 694 (1984) and adopted by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58 (1987).

To prove IAC, the defendant must establish two things. "First, the defendant must show that counsel's performance was deficient." Hernandez-Peralta, 261 N.J. at 247 (quoting Strickland, 466 U.S. at 687). Under this prong, the analysis is whether "counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "Second, the defendant must show that counsel's 'deficient performance prejudiced the defense.'" Hernandez-Peralta, 261 N.J. at 247 (quoting Strickland, 466 U.S. at 687). To prove this element, a defendant must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different." Strickland, 466 U.S. at 694. Failure to meet either prong of the Strickland/Fritz test will result in the denial of a petition for PCR. State v. Parker, 212 N.J. 269, 280 (2012).

The defendant must establish, by a preponderance of credible evidence, that he is entitled to the requested relief. Nash, 212 N.J. at 541. To sustain that burden, the defendant must allege and articulate specific facts that "provide the court with an adequate basis on which to rest its decision." State v. D.D.M., 140 N.J. 83, 101 (1995). The defendant must do more than present "bald or conclusory assertions" of ineffective assistance. State v. O'Donnell, 435 N.J. Super. 351, 376 (App. Div. 2014). There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.

"Complaints 'merely of matters of trial strategy' will not serve to ground a constitutional claim of inadequacy [of counsel]." Fritz, 105 N.J. at 54 (quoting State v. Williams, 39 N.J. 471, 489 (1963)). Courts must apply a "highly deferential" standard when reviewing counsel's strategic decisions. Strickland, 466 U.S. at 689.

A-3351-23

A.

Defendant first argues the PCR court erred in finding plea counsel's assistance was not rendered ineffective when she decided against filing a motion to suppress the identification. We are not persuaded.

To satisfy the first prong of the Strickland test, defendant must "identify specific acts or omissions that are outside the wide range of reasonable professional assistance." State v. Young, 474 N.J. Super. 507, 515 (App. Div. 2023) (citing State v. Jack, 144 N.J. 240, 249 (1996)).

"The inquiry at a Wade[/Henderson] hearing is whether the identification procedure presented a 'very substantial likelihood of irreparable misidentification' to undermine the reliability of the result as a genuine product of the eyewitness's memory rather than improper influence." State v. Arteaga, 476 N.J. Super. 36, 60 (App. Div. 2023) (quoting State v. Henderson, 208 N.J. 208, 289 (2011)). A court shall allow this pre-trial hearing when the rules governing show-up procedure "are not followed and no electronic or contemporaneous, verbatim written recording of the identification procedure is prepared." State v. Guerino, 464 N.J. Super. 589, 610-11 (App. Div. 2020).

Defendant cites Henderson, where our Supreme Court held that show-ups are "inherently suggestive," to support his contention that plea counsel's failure

9

to file this motion was outside the range of reasonable professional assistance. 208 N.J. at 259. In support of this argument, defendant points to: (1) an absence of evidence that the police offered the victim neutral, pre-identification warnings that the assailant may not be present in the lineup and he should not feel compelled to make an identification; and (2) the victim's stress levels so soon after the incident that may have impacted his ability to make an impartial identification. Both reflect factors outlined in Henderson to determine if a show-up was inherently suggestive. 208 N.J. at 261, 290. The Henderson Court, however, also concluded "'the risk of misidentification is not heightened if a show[-]up is conducted immediately after the witnessed event, ideally within two hours' because 'the benefits of a fresh memory seem to balance the risks of undue suggestion.'" 208 N.J. at 259.

Here, the show-up was conducted within two hours of the carjacking. Even so, defendant argues the victim's stress levels so soon after the incident influenced his ability to impartially identify the assailant. While Henderson confirms that high levels of stress decrease a victim's ability to identify the perpetrator impartially and accurately, the Court also found that "moderate levels of stress improve cognitive processing and might improve accuracy." 208 N.J. at 261. Because defendant offers no evidence to suggest that the victim

A-3351-23

suffered from high or moderate levels of stress, this factor alone cannot prove the show-up was impermissibly suggestive to warrant filing this motion.

Defendant also argues plea counsel should have filed this motion because the probable cause statement included in the complaint warrant after the show-up did not state whether the pre-identification warnings were given. Given this potential procedural misstep and the victim's previous misidentification of another individual, defendant's argument has some merit. However, the trial court found plea counsel's reasons for not filing the motion more persuasive, as other evidence in the record implicated defendant. This evidence included: surveillance video of defendant and Yashadeek committing the crime; witness statements; and the gun found near the abandoned vehicle. This corroborating evidence strengthens the reliability of the victim's identification. It was appropriate trial strategy for plea counsel to decide not to file a motion to suppress in the face of other overwhelming evidence. Such a filing may have, as plea counsel testified, thwarted plea negotiations. We are satisfied that plea counsel's representation did not fall below an objective standard of reasonableness.

Even if defendant provided sufficient evidence for this prong, he has failed to present sufficient evidence for the second prong of the Strickland test.

11

To satisfy the second prong of the <u>Strickland</u> test, defendant must "demonstrate 'how specific errors of counsel undermined the reliability of the finding of guilt.'" <u>Young</u>, 474 N.J. Super. at 516 (quoting <u>U.S. v. Cronic</u>, 466 U.S. 648, 659 (1984)).

Defendant argues he would not have pled guilty if plea counsel filed the motion and potentially had this evidence excluded. While defendant considers the victim's identification the "most damning evidence," defendant fails to address the impact of the remaining evidence that implicated him in the same way. Defendant cannot establish that plea counsel's decision not to file a <u>Wade/Henderson</u> motion carried a reasonable probability of changing his decision to plead guilty. Defendant has failed to meet both prongs of the <u>Strickland</u> test, and we affirm the PCR court's order denying relief on this theory.

B.

Defendant next argues that plea counsel was ineffective when she failed to inform defendant of Yashadeek's exculpatory letter. Again, we are not persuaded.

The Rules of Professional Conduct impose a duty on attorneys to keep clients "reasonably informed about the status of a matter and promptly comply

12

with reasonable requests for information," and counsel "shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." RPC 1.4(b)-(c). Regarding the decision to plead guilty, exculpatory evidence is necessary to make an informed decision. Applying the first prong of the Strickland test, failure to inform a defendant about exculpatory evidence likely falls below the objective standard and is outside the wide range of reasonable professional assistance. See Young, 474 N.J. Super. at 515. However, when an attorney considers all the evidence in representing a client who decides to plead guilty, the presence of exculpatory information may not overcome remaining inculpatory evidence or render representation ineffective. See State v. McIlhenny, 357 N.J. Super. 380, 382 (App. Div. 2003). Further, to satisfy the second prong of the Strickland test, defendant must also show a reasonable probability this information would have changed his decision to plead guilty.

Defendant claimed he was not made aware of Yashadeek's letter until after his pre-sentencing report was completed. However, plea counsel only learned of the potential exculpatory evidence from defendant. Given that his own knowledge spurred the investigation into Yashadeek's statements, defendant cannot claim ignorance as to the result of that investigation, especially

13

considering his sworn statements that he asked plea counsel all questions he had and was satisfied with her representation. During his plea colloquy, the PCR court asked defendant:

> THE COURT: Have you had enough time to discuss this matter with your attorney?
>
> MR. SEARS: Yes, Your Honor.
>
> THE COURT: Has she answered all your questions?
>
> MR. SEARS: Yes.
>
> THE COURT: Are you satisfied with her representation?
>
> MR. SEARS: Yes.
>
> . . . .
>
> THE COURT: Now, Mr. Sears, do you now have any questions for myself, for the prosecutor, or for your attorney about anything concerning this plea agreement?
>
> MR. SEARS: Not at the moment.
>
> THE COURT: And do you wish for the Court to accept your plea of guilty to this matter?
>
> MR. SEARS: Yes.

Sears was satisfied with plea counsel's representation and entered his guilty plea aware of the evidence against him. Defendant can neither establish that plea

14

counsel's failure to introduce a retracted letter in the face of other overwhelming inculpatory evidence fell below an objective standard of reasonableness, nor a reasonable probability that a retracted exculpatory letter would have changed his decision to plead guilty.

Based on our thorough review of the record, we conclude that the PCR court's findings were supported by sufficient credible evidence. Defendant's claims cannot establish that plea counsel's performance was deficient or that any alleged deficiencies prejudiced his defense. The strategic decisions made by plea counsel were reasonable under the circumstances and are entitled to our deference.

## C.

Finally, defendant argues the PCR court erred in failing to address the IAC claim regarding plea counsel's alleged failure to provide and review all discovery with him. Defendant seeks a remand so that the PCR court can address this issue.

When a PCR court does not address an issue raised by the parties in rendering its opinion, remand may be appropriate to allow all sides to argue their positions, create a complete evidentiary record, and to allow the court to reach

15

conclusions on questions of fact and law.  Berg v. Christie, 436 N.J. Super. 220, 263 (App. Div. 2014).

We consider whether a remand is necessary on this record.

After the PCR hearing, the court found plea counsel's detailed testimony about her general practice concerning review of discovery with her clients and her specific review of defendant's discovery with him to be credible. Conversely, the PCR court found defendant's testimony not credible.  The court would have been better served by creating a more complete record here.  This would have included considering defendant's claim that counsel failed to review discovery with him and applying the facts to this question on the record.  That did not happen.  However, the record is quite clear that the trial court found counsel credible and gave significant weight to her testimony that she reviewed all discovery, as well as salient trial strategy options, with her clients in general and this defendant in particular.

The detailed nature of the record reveals substantial credible evidence showing counsel reviewed discovery and trial strategy with defendant prior to his decision to plead guilty, defendant's bald allegations notwithstanding.  We easily conclude that the record does not call for a remand on this question.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-3351-23